No. 21254.

ROSS EVANS *v.* CENTURY CASUALTY COMPANY.
(413 P.2d 457)

Decided April 25, 1966.

TAYLOR & MADDEN, for plaintiff in error.

BEN L. WRIGHT, JR., for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

PLAINTIFF in error, Evans, will be hereinafter referred to as the defendant or by name. Defendant in error, Century Casualty Company, will be referred to as plaintiff or Century.

Ross Evans, the defendant in the trial court, purchased in his own name a 1960 Cessna 182 Skylane airplane. Thereafter, he executed a promissory note payable to the United States National Bank of Grand Junction in the amount of $13,500 and gave as security for the note a chattel mortgage on the airplane.

Evans insured the airplane with Century against risk of loss by collision. According to Century, Evans warranted that the airplane would not be used for commercial or limited commercial (charter) purposes. The policy excluded coverage for the airplane if used for commercial or limited commercial purposes. It also contained a clause which provided that, in case of loss of the aircraft, Century would pay the note held by the bank; and also, in the event the loss occurred while Evans was performing any act constituting a breach of warranty or policy condition, Century would, to the extent of the payment made to the bank, be subrogated to the rights which the bank held against the insured. The policy also contained a provision that any qualified pilot who met certain conditions might operate the airplane within the coverage of the policy.

On August 15, 1962, while on a flight to Artesia, Colorado, the airplane crashed. It was being piloted at that time by one William Nelson, who was a qualified pilot within the terms of the policy. A Mr. and a Mrs. Fordyce and a Mr. Waite were passengers in the airplane at the time of the mishap.

Century took the position that the airplane was destroyed while carrying passengers for hire and paid the balance due on the note to the bank; it allowed for the salvage of the aircraft and then brought suit against Evans for indemnification, contending that the use was beyond the coverage of the policy and therefore a breach

of warranty. In his answer, Evans denied that he had warranted that the airplane would not be used for commercial purposes and denied that the use of the airplane on the flight in question was a commercial or charter use.

At the trial, Century called to the witness stand the defendant, the pilot, Nelson, and passenger Fordyce. Century also introduced into evidence the deposition of Waite, one of the other passengers on the trip. Evans and the pilot, Nelson, both testified on behalf of the defendant.

At the close of the case, the court granted Century's motion for a directed verdict on the issue of liability, holding that the flight was, as a matter of law, one which carried passengers for hire. Thereafter, another trial was held on the issue of the salvage value of the aircraft and the amount of attorney's fees to be awarded to the plaintiff. The second trial produced a judgment for attorney's fees in the amount of $1871.30 and set the salvage value of the airplane at $3500.

Evans raises four assignments of error which he contends dictate reversal of the judgment. The main thrust of Evans' argument is directed to the trial court's action in declaring that, as a matter of law, the flight to Artesia constituted a flight for hire and therefore was outside the coverage of the policy.

Since trial was had to a jury, we must take the evidence introduced in behalf of Evans as being true and view it in the light most favorable to him in determining whether the court was justified in taking this issue from the jury. *Elliott v. Hill,* 148 Colo. 553, 366 P.2d 663; *Freeman v. Boyer Bros.,* 82 Colo. 509, 261 Pac. 864, 55 A.L.R. 1285; *Straight v. Western Light & Power Co.,* 73 Colo. 188, 214 Pac. 397.

Applying those principles to the evidence in this case, it appears that Nelson helped Evans at the airport while Evans was engaged in other pursuits, and in return was permitted to use the airplane for his own personal use

when he so desired. Nelson, however, was not authorized by Evans to carry passengers commercially when he was using the airplane. Nelson testified that while at the airport he received a call from Fordyce asking if he could take Fordyce and two others to Artesia. He testified that he wanted to make a trip to Artesia for his own personal reasons and so agreed to take the three passengers. He further testified that he never intended to charge these passengers for the trip and that there was no discussion at any time of rates or of any payment at all.

Fordyce testified that he called the airport because he wanted to fly to Artesia on business. He called the Craig Flying Service and Nelson answered the telephone. He asked Nelson if there was an airplane which could take three passengers to Artesia, and Nelson replied in the affirmative. No one told Fordyce the flight was free and no one told him there would be a charge. He was never quoted any rates, nor was any agreement even discussed as to the charge. After the accident, Nelson filed a flight report with the Federal Aviation Agency stating he was on his own personal business.

■ From this evidence, the trial court found, as a matter of law, that since the airplane was not being used for Evans' business and pleasure on the day in question, it therefore followed, as a matter of law, that it was necessarily being used as a carrier of passengers for hire. We cannot follow that reasoning. According to the testimony of Evans and Nelson, the airplane was being piloted by an authorized person and was being used for his (the pilot's) business and pleasure and not for carrying passengers for hire. This was within the coverage of the policy.

■ The trial court further found that, as a matter of law, the passengers were passengers for hire and under an obligation to pay for their flight. We do not agree. The evidence on behalf of Evans was that there was never any intention to charge the passengers; fur-

ther, that they were being taken on a free ride and that there was never any discussion of rates or whether they would or would not be charged for the flight. The testimony presented a situation from which the jury, as a matter of fact, and not the judge, as a matter of law, was the proper functionary to draw the inferences as to whether the flight was one for hire.

■ We deal next with the question of the propriety of admitting into evidence the Waite deposition. We hold that its admission was improper because there was no showing that the deponent Waite was unavailable to testify or was more than 100 miles from the place of trial at the time of trial.

Rule 26 (d) (3), R.C.P. Colo. provides in pertinent part that a deposition may be used by any party for any purpose if:

"* * * *the court finds:* * * * 2, that the witness is absent from the state of Colorado or is at a distance more than 100 miles from the place of trial or hearing, * * *" (Emphasis supplied.)

■ In order that a deposition may be admitted into evidence, the party offering the deposition must make a sufficient showing of the unavailability of the deponent at the time of trial. *Trujillo v. People,* 139 Colo. 286, 338 P.2d 102; *Archina v. People,* 135 Colo. 8, 307 P.2d 1083; *Haynes v. People,* 128 Colo. 565, 265 P.2d 995.

The only showing of unavailability in this case was the fact that at the time the deposition was taken, Waite resided in Evergreen, Colorado, which is more than 100 miles from the place of trial; and also that Waite stated in his deposition that he did not drive an automobile and that he would not look favorably toward coming to the trial. However, the deposition goes on to relate Waite's willingness to attend the trial if his appearance were deemed necessary.

In *Trujillo v. People, supra,* the face of the deposition itself indicated that the deponent would not be able to testify at the trial. However, *at the time of trial,* no

showing was made that the witness was unavailable to testify, and we therefore held that the foundation laid for the use of the deposition was insufficient. A similar holding was made in *Archina v. People, supra,* where the deposition indicated that the deponent was reporting for active duty in the Air Force in Germany on the day of trial and would not be available to testify. Furthermore, the Sheriff testified that 20 days prior to trial he contacted the deponent's place of employment but was unable to locate him for service of subpoena. Nevertheless, the Sheriff did not make inquiry at the deponent's residence or at other places, and we held there that the deposition was inadmissible for lack of sufficient showing of unavailability at the time of trial.

In the instant case, plaintiff, who offered the deposition, made no showing whatsoever that Waite was not available to testify at the time of trial. It may have been that Waite was in Evergreen or in parts unknown at the time of trial. However, the burden of proof of unavailability is on the party offering the deposition, and the failure to carry the burden precludes the use of the deposition as evidence. *Haynes v. People, supra.*

We deal next with the propriety of allowing attorney's fees in this action. In accordance with its contract, upon proof of loss, Century paid to the mortgagee bank $12,205.78, which was the amount due on the note, and took an assignment of the note.

In the absence of a contract provision or statute to the contrary, attorney's fees cannot be recovered in an action on an insurance policy. 8 Appleman, *Insurance Law and Practice,* § 14532.

There is no statute in Colorado authorizing attorney's fees in cases such as the one before us, nor does the breach of warranty endorsement provide for payment of attorney's fees. It is true the promissory note to the bank had such a provision; however, the plaintiff's suit is actually based upon the breach of warranty endorsement and not on the note.

Century's claim against Evans had no validity unless Century could prove that Evans had breached his warranty to it. Unless such a breach occurred, Evans owed nothing to it and the note was merely evidence of the amount it had paid to satisfy the mortgagee bank's claim. The gravamen of the action was therefore breach of warranty and not liability on the note as such. Century was acting as an indemnifier for Evans when it paid the bank and as such is only entitled to such sums as it paid to carry out its indemnification agreement. It was certainly not a bona fide purchaser for value. It is therefore clear that Century was not entitled to recover according to the terms of the note but if they could recover at all, it would be only according to the amounts which it paid the bank for the note.

There is a good deal of discussion in both briefs as to whether certain issues were waived as a result of stipulation allegedly made by counsel. Suffice it to say, that in the disposition we make of this case it is not necessary here to make order out of what might be termed, to say the least, a confused situation with regard to the issues to be tried.

The judgment is reversed and the cause remanded for a new trial on all issues made by the pleadings.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE SCHAUER concur.