**Harriette S. TABAS, et al.**

v.

**Daniel M. TABAS, et al.**

**No. 91–1355.**

United States District Court,
E.D. Pennsylvania.

April 11, 1996.

Richard A. Sprague, Sprague & Sprague, Philadelphia, PA, for plaintiffs.

Paul R. Rosen, Spector Gadon & Rosen, P.C., Philadelphia, PA, for defendants.

*MEMORANDUM*

DALZELL, District Judge.

In a recent Memorandum and Order, we trifurcated the issues in this action. *See Tabas v. Tabas*, No. 91–1355, at 4–5, 1996 WL 107848 (E.D.Pa. Mar. 12, 1996) (docket no. 211). In doing so, we sought to "sharpen[ ] the issues for the jury and impos[e] discipline on counsel". *Id.* at 6. We noted:

> The issue in this case is not whether Dan Tabas and the other defendants are Bad Guys, and counsel shall avoid turning the trial into a plebiscite on these issues.

Rather, counsel shall focus the jury's attention on *RICO* liability, which is, after all, the only reason why this case is in this Court.

*Id.* We did not set a trial length but rather instructed the parties to tailor a joint pretrial stipulation to conform to our instructions. *Id.* at 7 ("In the light of our decision on trifurcation, we will allow the parties to tailor their joint pretrial stipulation to conform to the structure that we have set this day.").

The parties have submitted their joint pretrial stipulation, and we have reviewed it. It is clear from that document that counsel for both sides have disregarded our instructions to focus on the narrow issues of RICO liability. The parties' joint pretrial stipulation confirms that they have strayed from the heart of this case.

For example, defendants have decided, apparently, to use the RICO phase of this action to attack Charles Tabas, his wife, and his children. In defendants' view, Charles's children could not "make it" in Tabas Enterprises. Joint pretrial stip. ex. B ¶ 45. Andrew "sells darts for a living", Richard "generally spends his time collecting antique cars and coming to depositions", and Nancy, "unwilling to 'start at the bottom'" of Tabas Enterprises, "went through a series of other jobs" and "now lives in rural Northeast Pennsylvania". *Id.* ¶¶ 46–49.[1] Charles's widow, Harriette, "resentful over her unhappy life and the limited achievements of her children", became "consumed with envy and greed" and "conjured up" this RICO suit. *Id.* ¶¶ 54, 133.

These and other epigrams appear to form defendants' non-economic arguments against RICO liability.[2] As colorful and insulting as they are, these comments are simply irrelevant to the legal issues in this case, to wit, whether Daniel has engaged in a scheme to defraud within the meaning of the mail fraud statute, 18 U.S.C. § 1341, with the requisite pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962.

---

1. "[C]oming to depositions" is apparently not an indicium of failure if one earns one's living doing so.

2. Defendants presented many of their economic arguments in their summary judgment papers. In those papers they did not, however, argue that summary judgment was appropriate because of, *e.g.,* Nancy Tabas's residence.

Plaintiffs' list of disputed facts reveals a different infirmity. The joint pretrial stipulation makes clear that they view nearly every business decision of Daniel with suspicion. They will seek to prove, for example, that Daniel's alleged scheme to defraud includes the dramatic issue of whether ivy covers, or does not cover, the picture of Mickey Rooney at the Tabas Hotel. Joint pretrial stip. ex. A ¶ 101. The color of the hotel's carpets, the dark wallpaper, the heavy furniture, and the floral bedspreads apparently not only reveal poor taste (*i.e.*, "not in keeping with the lighter, brighter, less ornate tastes of today's traveler", *id.*), but also are, in plaintiffs' view, part of Daniel's pattern of racketeering activity.

We are also deeply troubled at the parties' failure to give serious thought both to the witnesses that they intend to present at trial and to their testimony. Defendants' failure is patent: they write that twenty-two of twenty-three witnesses will testify to "[a]ll facts in issue", with little or no further elaboration. *Id.* pt. IV.B. Plaintiffs have done a better job than defendants of focusing their witnesses's testimony, but their list has its problems with cumulative and marginally relevant testimony as well. *Id.* pt. IV.A.

■ The district courts are not without power to prevent trials from becoming "circus[es]". *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 608–11 (3d Cir.1995). In *Duquesne Light*, our Court of Appeals recognized that "a district court has inherent power to control cases before it, provided it exercises that power in a manner that is in harmony with the Federal Rules of Civil Procedure." *Id.* at 609 (citation omitted) (internal quotation marks omitted). As that Court notes, "it has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by [its] own judgment and whim." *Id.* (citation omitted) (internal quotation marks omitted). Rather, a district court may properly make an informed decision to limit the length of a trial consistent with the federal rules of procedure and evidence. At bottom,

*Duquesne Light* reaffirms that "the litigants in a particular case do not own the court." *Id.; see also MCI Communications Corp. v. AT & T,* 708 F.2d 1081, 1171 (7th Cir.) ("Litigants are not entitled to burden the court with an unending stream of cumulative evidence."), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

We have exercised our discretion to engage in trial management once already, through the use of trifurcation. After giving ample opportunities for the parties to provide their comments and insight, we decided to try separately the issues of RICO liability, state-law liability, and damages. The Memorandum and Order of March 12, 1996 provides our rationale for that decision. *See Tabas v. Tabas,* No. 91–1355, at 4–5, 1996 WL 107848 (E.D.Pa. Mar. 12, 1996) (docket no. 211).

■ Now, after consideration of the parties' list of witnesses, disputed facts, and estimates of trial time [3] (all of which are in the joint pretrial stipulation), we have decided to limit the length of the trial. Were we writing on a blank slate, we might have considered limiting certain witnesses' testimony *sua sponte* (for example, limiting the number of Tabas children or precluding lawyers from testifying altogether). *Duquesne Light,* however, wisely forecloses this form of judicial micro-management:

As a general matter, it is the task of counsel, not the Court, to make the selection of materials most appropriate for introduction into evidence.... [T]hey ordinarily should allow a party to fill its allotment with whatever evidence that party deems appropriate, subject, of course, to rules of admissibility independent of the overall time limitation for the case being tried.

*Duquesne Light,* 66 F.3d at 610 (citation omitted) (internal quotation marks omitted). Instead, we have decided to provide each side with thirty hours to present their case. The thirty-hour period does not include jury selection, opening or closing statements, or the jury charge. It does include direct and

---

**3.** Plaintiffs have asked for forty trial-hours to present their case. Defendants have asked for five days to present their case. Joint pretrial stip. pt. VII.

redirect examination, cross-examination, and plaintiffs' rebuttal case. Within this broad perimeter, the parties may apportion those thirty hours as they see fit.[4]

We recognize that our approach today will require the parties to re-examine and prioritize their evidence. Implicit in the *Duquesne Light* holding, however, is the principle that a party simply does not have a right to introduce all the relevant evidence that it might have in any given case. In *Duquesne Light*, the Court of Appeals relied on Federal Rule of Evidence 403, which allows exclusion of relevant evidence "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence". *Id.* (citing Fed.R.Evid. 403). Similarly, the "elimination of unjustifiable expense and delay", Fed.R.Evid. 102, and the power of a court to "control . . . the mode and order of interrogating witnesses and presenting evidence", Fed.R.Evid. 611(a), apply equally to relevant and irrelevant evidence. *See also MCI Communications Corp.*, 708 F.2d at 1171.

As with our decision to trifurcate this case, our decision to limit the trial time will "require counsel to exercise a discipline of economy in choosing between what is important and what is less so." *Duquesne Light*, 66 F.3d at 609. If counsel want to turn this case into a roundtable discussion on the misconduct and misperceptions of prior counsel, or an extended, jury-supervised discovery conference, they have thirty hours to do so. If counsel want to put every Tabas child on the stand to discuss his or her *curriculum vitae*, they have thirty hours to do that as well. Absent meritorious objection, the Court will not interfere with the counsels' trial strategy. They may try this case as they see fit, consistent with our decision today.

We are hopeful that our ruling today will spur counsel to re-examine their witness list and cull out cumulative and tangentially relevant evidence. A Dostoevsky-esque rendition of *The Brothers Tabas* is simply not an option here. Counsel should instead take a more Hemingway-esque approach to this case.

We remain of the view that the RICO phase of this action is fairly narrow. Much of the parties' evidence (to the extent that it is relevant at all in the RICO phase) may be more appropriate for the state-law liability phase or the damages phase, which await future days. Thirty hours will give counsel plenty of time to make an uncluttered presentation of their best evidence to the jury.[5]

As the Court of Appeals noted in *Duquesne Light*, because "a court's resources are finite and [it] must dispose of much litigation", *id.* at 610, reasonable time limitations are appropriate in certain cases. This is one of those cases. Based on the information submitted to the Court, we have provided the parties with ample time for the first phase of this litigation.

An appropriate Order follows.

### ORDER

AND NOW, this 11th day of April, 1996, upon consideration of the parties' joint pretrial stipulation, and as an exercise of the Court's inherent power as recognized in *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 608–11 (3d Cir.1995), it is hereby ORDERED that:

1. The first phase of this trial is limited in length consistent with the accompanying Memorandum; and

2. The parties will also adhere to the following guidelines during trial days:

---

4. We are basing the trial time on the assumption of a trial day of five and one-half hours. The Court plans to begin the day no later than *9:30* a.m. and conclude at 4:30 p.m., with two fifteen-minute breaks and a one-hour lunch break.

5. We note, too, that we have continually expanded our estimates of trial time in the light of the parties' submissions. In a scheduling Order dated January 26, 1996, we proposed that trial *on all phases* should take no longer than ten days.

*See* docket no. 163. The parties commented on our proposal, and, after trifurcating the case, we intimated that five days for the RICO liability phase would be sufficient. *See* docket no. 211. Our final scheduling Order today envisions ten trial days only for the first phase of this action. *Cf. MCI Communications Corp.*, 708 F.2d at 1170–71 (setting a twenty-six day limit for each side's case, even though one side had asked for "eight to nine months").

(a) The Court will not hear motions or have extended colloquy with counsel after 9:30 a.m. or before 4:30 p.m.; and

(b) The Court will not entertain sidebar conferences during the trial day.