Robert "Tim" MALONEY,
Plaintiff–Appellant,

v.

Michael D. BRASSFIELD,
Defendant–Appellee.

No. 09CA0223.

Colorado Court of Appeals,
Div. V.

Sept. 16, 2010.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2010.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, Colorado; McCormick & Murphy, Kirk R. McCormick, Colorado Springs, Colorado, for Plaintiff–Appellant.

Levy, Morse & Wheeler, P.C., Marc R. Levy, Jesse O. Brant, Greenwood Village, Colorado, for Defendant–Appellee.

Opinion by Judge WEBB.

This automobile accident case, in which defendant Michael D. Brassfield admitted liability but contested causation and damages regarding plaintiff Robert "Tim" Maloney's alleged injuries, juxtaposes a trial court's discretion to conduct a so-called "clock trial" against the due process requirement that parties have adequate time to present their

cases. The court set the jury trial for a maximum of seven days; ruled that trial time would be split equally between Maloney and Brassfield; tracked use of trial time with a clock; and refused all of Maloney's requests during trial for additional time, despite his assertions that he was not being afforded an adequate opportunity to present his case.

On the particular facts presented, we conclude that the court did not abuse its discretion or violate due process. We affirm the verdict in favor of Brassfield because we further conclude, in response to Maloney's other arguments, that error in allowing preservation depositions when the witnesses were available was harmless, and the court did not abuse its discretion by admitting a surveillance video of Maloney.

## I. The Clock Trial

The trial was continued four times. In response to the parties' initial concerns over the amount of trial time that would be required, by August 2007 the court had ordered the trial set for seven days, with the possibility of adding an eighth day. The court went on to require a pretrial conference two weeks before trial "at which any timing issues will be addressed. Court will consider using a clock to allocate time at trial."

Brassfield submitted a "Motion Regarding Various Trial Management Issues" requesting that the court allocate 19.5 hours, an equal amount of the total time available in a seven-day trial, to each party. With the trial set for April 1, 2008, the court ordered Brassfield to set a trial management conference where "[t] he Court will advise the parties as to its standard time management rules for trials." The record does not include a transcript of that conference. However, according to a March 8, 2008, minute order, the court "explained time management and trial procedures" to counsel for both sides.

Shortly thereafter, Maloney submitted his "Draft Identification of Witnesses and Exhibits," which listed 42 possible witnesses, 34 of whom appear to have been experts. On April 1, 2008, the trial was continued again and reset for seven days.

Before the November 11, 2008 trial, Maloney requested a pretrial telephone conference, stating:

1. That Plaintiff has attempted to schedule multiple doctors for trial testimony, but because of scheduling, Plaintiff does not have adequate time to call the Plaintiff and at least five other witnesses during the time allotted by the Court.

2. Since the Plaintiff has the burden of proof, he needs more time to fully present his case

. . . .

4. Plaintiff needs adequate time to fully present his case.

5. Plaintiff would ask the Court to allot additional time for the trial, if possible[.]

The trial court denied this request because "[t]he Court is familiar with the case and more than adequate time exists for trial. The Court has previously reviewed with counsel the trial time division and the trial time management procedures that will be used."

Just before trial, Maloney filed a motion requesting "that this Court allow Plaintiff to put on the remainder of his witnesses after Defendant's witnesses are scheduled to be done testifying." When the trial began, the court addressed time limits:

[There] is a motion by the plaintiff to gain some additional time in the time allocations we've talked about. That motion is denied, given the narrow issues that are presented at trial there is more than enough time for trial, frankly substantially more than enough time for trial. There's plenty of margin for error for the time that's needed, so I'm not going to allocate any additional time.

I've already gone through the method I'm going to use for keeping time, and I'm basically going to count the podium time that either part[y] is using, and I'll give you the running tallies, because we can't truly predict until we know the efficiency of counsel, how many hours of jury time we'll actually have each day, and how efficient we are in coming back from breaks and handling those kinds of things.

With respect to objections and bench conferences, or dealing with issues over the time allotted for breaks, I frankly exercise my own discretion in deciding who I allot that time to, depending on how valid the arguments that were made.

Throughout the trial, usually at the end of each day, the court updated the parties as to how much of their allotted time had been used. After the time check on the fourth day, the court said, "That's the time estimate you have. Use it as you see fit. Strategic and tactical choices." Once, the court cautioned Maloney about tightening up his presentation.

As the trial went on, Maloney objected to the time limits and requested more time. Although the court would not start the trial day early or end late, it was willing to shorten the lunch break. The court denied all of Maloney's requests for more time with comments such as: "And, you know, the rules were set out for the time keeping. I'm not going to vary them." The court also explained, "[I]t continues to be my view in this case there's more than sufficient time to present both sides. There's nothing in my mind unusual about the case[.]"

Maloney presented thirteen witnesses, including eight experts; Brassfield presented seven witnesses, including four experts. As more fully explained in part II below, the court allowed Brassfield to play video "preservation" depositions of Dr. Scott Brassfield, who was the defendant's father and had been Maloney's primary care physician for 21 years, and of Dr. Edgar Galloway, whom Maloney had seen for injuries resulting from the accident, even though both witnesses were available to testify at trial. Maloney played an edited cross-examination of Dr. Galloway. Because his time was exhausted, he could not play his cross-examination of Dr. Brassfield.

After the jury returned a verdict in favor of Brassfield, Maloney moved for a new trial, asserting in part that the time limitations precluded him from cross-examining Dr. Brassfield and limited his cross-examination of Dr. Galloway, in violation of due process. The trial court denied the motion, explaining:

As the Court has previously found, the issues in this case are of the utmost importance to the parties, in fact, life-altering. However, from a legal and evidentiary perspective, the case presents little complexity .... [because] only narrow issues of damages and causation remained for trial.

As the Court noted during trial and after the close of evidence in the trial, the Court found nothing in the presentations or in the proffers of evidence by Plaintiff to indicate that the available trial time was less than adequate. The trial proceedings and Plaintiff's proffers demonstrated an unusually high degree of repetition in the evidence presented as well as overlap and duplication among the witnesses. This presentation approach was employed with most of the Plaintiff's witnesses. The result was that the Plaintiff essentially presented its case anew and in full with nearly every witness. The evidence proffered by Plaintiff as having been eliminated due to time constraints was similarly repetitive.

The court added that "[t]he Court imposed trial time limitations and Plaintiff chose to forego cross-examination of Dr. Brassfield in order to devote trial time to other issues."

### A. Law

■ "[T]he conduct of the trial and the control of counsel and statements made to the jury are fully within the discretion of the trial court." *Smartt v. Lamar Oil Co.*, 623 P.2d 73, 76 (Colo.App.1980). *See also* CRE 102 ("[t]hese rules shall be construed to secure ... elimination of unjustifiable expense and delay"); CRE 611(a) ("[t]he court shall exercise reasonable control over ... present[ation of] evidence so as to ... avoid needless consumption of time").

The clock trial is a matter of first impression in Colorado. Use of this procedure appears to be increasing. *See* Martha K. Gooding & Ryan E. Lindsey, *Tempus Fugit: Practical Considerations for Trying a Case Against the Clock*, 53 Fed. Law. 42 (Jan. 2006). First, we identify principles that other courts have recognized in determining whether litigants in such trials have been afforded due process. Then we apply those

principles to conclude that Maloney's due process rights were not violated.

Federal courts condone clock trials. *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 610 (3d Cir.1995) ("a court's resources are finite and a court must dispose of much litigation") (collecting cases). Fewer state courts have addressed the issue. *See, e.g., In re Marriage of Ihle,* 577 N.W.2d 64, 67 (Iowa Ct.App.1998); *Ingram v. Ingram,* 125 P.3d 694, 697 (Okla.Civ.App.2005).

Time limits may violate a party's due process rights. *In re Marriage of Ihle,* 577 N.W.2d at 67.

> [A]rbitrary, inflexible time limits can impose a serious threat to due process principles. Justice cannot always be achieved within the orderly environment of an assembly line.... Thus, judges must not sacrifice their primary goal of justice by rigidly adhering to time limits in the name of efficiency.

*Id.* at 68. *See also General Signal Corp. v. MCI Telecomms. Corp.,* 66 F.3d 1500, 1508 (9th Cir.1995); *see generally Lisiten v. Lisiten,* 30 Colo.App. 375, 377, 492 P.2d 895, 896 (1972) ("We are aware of the crowded docket.... Nevertheless, litigants are entitled to have sufficient time to make an orderly presentation of their case.").

The standard of review is for an abuse of discretion. *United States v. Hildebrand,* 928 F.Supp. 841, 845 (N.D.Iowa 1996) ("Although there is no disagreement that the court has the discretion to manage trials, there also seems to be no disagreement that this discretion has its limits and must not be abused."). An abuse of discretion occurs where the trial court's decision is contrary to law, arbitrary, or capricious. *Ingram,* 125 P.3d at 696. This standard is generally consistent with Colorado law. *See Lisiten,* 30 Colo.App. at 377, 492 P.2d at 897.

■ In clock trials, some courts employ a heightened level of scrutiny. *See Duquesne Light Co.,* 66 F.3d at 611 (identifying abuse of discretion review but engaging in an "independent review" of court filings and offer of proof); *Ingram,* 125 P.3d at 697 ("conduct of a trial is a matter of the sound discretion of the trial court" but "[t]he seriousness of the assertions by defendants that they did not receive a fair trial requires this Court to examine with great care the record"). We apply such a heightened standard to determine whether the time limits constituted an abuse of discretion at two levels: were the limits inadequate for the nature of the proceeding at the outset; or, if not, whether they became inadequate because of developments during the proceeding.

### B. Inadequacy at the Onset

■ Because a time limit that is inadequate from the onset denies a party the right to a full and fair trial, it is an abuse of discretion. *Compare In re Marriage of Goellner,* 770 P.2d 1387, 1389 (Colo.App.1989) ("[B]ecause the mother was allotted only one-half hour to present her case-in-chief, we conclude that she was denied due process."), *with In re Marriage of Yates,* 148 P.3d 304, 310 (Colo.App.2006) (concluding seven hours was sufficient for husband to present his case). *See also Ingram,* 125 P.3d at 699 (despite "reluctan[ce] to rule that the trial court's imposition of time limits is itself fundamental error except in the most egregious circumstances," expiration of husband's time before he was able to present issues concerning certain specific items of real property was reversible error).

■ Here, for the following two reasons, we cannot conclude that setting a seven-day trial was inadequate.

First, the trial court's rulings show familiarity with the particular facts of the case that could impact time requirements. *See Duquesne Light Co.,* 66 F.3d at 610 ("[A] district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well as their estimates of trial time."). Like the trial court, we give significant weight to Brassfield's admission of liability, which left only causation and damages for trial. *Cf. Trepel v. Roadway Exp., Inc.,* 40 Fed.Appx. 104, 108 (6th Cir.2002) (not selected for publication) ("The district court's time limit was reasonable. The district court was not mandated to retry the entire case, only the issue of damages.... Having permitted

the examination of multiple expert witnesses, it was reasonable for the trial court to set time limits to ensure the expert testimony was not unnecessarily repetitious.").

Second, we also give weight to the trial court's comment that "[i]t's unusual that I have the luxury of having two such experienced and skilled advocates on a trial.... Both of you have been in my courtroom quite a few times." *See Applera Corp. v. MJ Research Inc.*, 389 F.Supp.2d 344, 348 (D.Conn.2005) ("Where, as here, both sides were represented by sophisticated, experienced litigators, ... the Court cannot conclude that the clock trial was unfair.").

Accordingly, we discern no abuse of discretion because in our view the case appeared to be triable within the time limits imposed when those limits were set. *Enright v. Auto–Owners Ins. Co.*, 2 F.Supp.2d 1072 (N.D.Ind.1998) (determining that fifteen hours per side was sufficient to determine insurance coverage for a house fire).

### C. Inadequacy During the Proceeding

■ In determining whether time limits became inadequate over the course of a trial, other courts have identified a number of factors, including:

- Whether the court's imposition of time limits or adjustment of time limits resulted in unfair surprise;
- Whether the court allowed the parties to make their own strategic decisions;
- Whether the court adequately communicated the elapsed or remaining time;
- Whether the time limits became impractical because of unexpected developments;
- Whether the court demonstrated flexibility in response to unexpected developments; and
- Whether the complaining party made a sufficiently detailed proffer in requesting extra time.

*See, e.g., Hildebrand,* 928 F.Supp. at 845–48 (enumerating general principles courts should consider when imposing time limits). After considering these factors, an appellate court must ultimately determine whether any trial court error in enforcing the time limits

was harmless. *Duquesne Light Co.,* 66 F.3d at 611.

■ Initially, we reject Maloney's assertion that the party who bears the burden of proof should receive a greater allocation of time. Maloney cites no authority supporting this assertion, and we adopt the rationale of cases rejecting it. *See General Signal Corp.,* 66 F.3d at 1509 ("allocation of additional time to [plaintiff] would have been unfair to [defendant]"); *Trepel,* 40 Fed.Appx. at 108 (approving of equal allocation because "the burden to lay the evidentiary 'foundation' ... alone is no cause to find equal time between the parties per se unreasonable").

### D. Application

#### 1. Whether Imposition or Adjustment of Time Limits Resulted in Unfair Surprise

■ A trial court should not impose trial time limits without sufficient warning for the parties to plan accordingly. *Cf. Hildebrand,* 928 F.Supp. at 849 ("changes in allotments ... must only be made with notice and upon a determination of need").

■ Absent unexpected developments, as discussed below, a trial court should not change the agreed-upon time limits once trial is underway. *Duquesne Light Co.,* 66 F.3d at 610 ("[A]n allocation of trial time relied upon by the parties should not be taken away easily and without warning."). Nor should additional time be granted unequally to the parties. *See General Signal Corp.,* 66 F.3d at 1508.

Here, Brassfield's motion regarding time management and the court's March 8, 2008 order show that Maloney was on notice long before November 2008 that the trial had been set for seven days and time limits would be imposed. Further, the trial court did not change the time limits during trial. The record does not support Maloney's argument that the trial court's use of the final day of trial time for closings and deliberation came as a surprise.

### 2. Whether the Parties Were Allowed to Make Strategic Decisions

In imposing time limits, trial courts should allow the parties maximum latitude in presenting their cases within the allotted time. *Duquesne Light Co.*, 66 F.3d at 610 ("As a general matter, it is the task of counsel, not the Court, to make the selection of materials most appropriate for introduction into evidence.") (internal quotations omitted); *Tabas v. Tabas*, 166 F.R.D. 10, 12–13 (E.D.Pa.1996) (avoiding "judicial micro-management" by providing each side with thirty hours, not including jury selection, opening and closing statements, and jury charge; "[w]ithin this broad perimeter, the parties may apportion those thirty hours as they see fit").

Here, rather than imposing any time limits on particular phases of the trial, the court kept a running tally of each side's elapsed time. The court reminded counsel that presentation of evidence was a strategic decision on which the court would not intrude. *See General Signal Corp.*, 66 F.3d at 1508 (the record demonstrated that plaintiff, "not the court, was primarily responsible for its inability to present its case within the time limits").

### 3. Whether Elapsed or Remaining Time Was Communicated Adequately

Consistent with allowing the parties latitude to present their cases, a trial court should keep them informed of their status on the clock. *See id.*, (noting trial court's continued communication throughout trial about time allocation and availability).

Here, the trial court updated the parties at the end of each trial day. Nevertheless, Maloney argues that the court's system of allocating "podium time"—time spent arguing objections, for example—after the fact and in its discretion based on which party prevailed, impaired the parties' ability to plan for use of their time. However, the record does not show any inordinate use of "podium time" by either side.

### 4. Whether Unexpected Developments Made Time Limits Impracticable

Unexpected developments during trial could make a time limit that was initially adequate become insufficient for the parties' reasonable needs. *Cf. Applera Corp.*, 389 F.Supp.2d at 348 (where one-week continuance granted because of defense counsel's illness, court's adjustment of allotment of trial time was reasonable, and did not result in prejudice). However, such a development must be a specific event that could not reasonably have been anticipated by a party who knew of, and had prepared to work within, the previously set time limitations. If mere mismanagement of available trial time constituted such an unexpected development, a party would profit from poor strategic decisions at the expense of necessary trial court discretion in trial management.

Here, Maloney has not identified any such unexpected developments during trial. His failure to play the cross-examination of Dr. Brassfield occurred because he had already exhausted his time, although he knew that the defense would play the doctor's direct examination. And he edited his cross-examination of Dr. Galloway before trial.

### 5. Whether the Trial Court Demonstrated Flexibility

Because unexpected developments could render a previously reasonable time limit inadequate, "[g]enerally, courts look upon rigid hour limits for trials with disfavor." *General Signal Corp.*, 66 F.3d at 1508. "[A]ny pre-trial limitations must be flexibly administered during trial to prevent any sacrifice of justice to efficiency." *Hildebrand*, 928 F.Supp. at 849. *See also Applera Corp.*, 389 F.Supp.2d at 348 ("Where, as here, . . . defendants were granted some additional time exceeding the 20 hour limit, the Court cannot conclude that the clock trial was unfair.").

Here, we cannot say that in refusing Maloney's requests for more time, the trial court abused its discretion. As explained in subsections (1) and (4) above, Maloney has not shown that either the court's time limits took him by surprise or an unexpected develop-

ment occurred during trial necessitating more time.

### 6. Whether Maloney Made a Sufficiently Detailed Proffer

■■■ To aid a trial court in addressing requests to depart from previously set time limits, a party seeking such relief should identify the evidence that is in danger of being excluded. *See Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir.2008) (approving time limits in part because plaintiffs "did not specify what evidence they would have presented if more time had been allotted"); *In re Marriage of Ihle*, 577 N.W.2d at 69 (finding no abuse of discretion where record "fail[s] to disclose the nature of the excluded testimony and its importance to ... the case ... in managing the allotted trial time"). Identifying such evidence also enables an appellate court to review the trial court's determination. *See* CRE 103(a)(2) (requiring an offer of proof where trial court has excluded evidence).

Here, although Maloney stated during trial that he was not presenting five witnesses due to the time limits, he failed to make an offer of proof as to their testimony. Submission of his pretrial disclosures as an exhibit to his motion for a new trial is insufficient because the disclosures are general and their submission after the case had gone to the jury was untimely. *Messler v. Phillips*, 867 P.2d 128, 135 (Colo.App.1993) (proffer must be timely made to the trial court), *disapproved of on other grounds by Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1058 (Colo.1995). Similarly, Maloney presented no offer of proof as to the consequences of shortening his own direct testimony or limiting the cross-examinations of Dr. Galloway and an accountant. *See People v. Saiz*, 32 P.3d 441, 448 (Colo.2001) ("Even though an excluded videotape ... permits a reviewing court to know what the excluded evidence would have shown, it cannot by itself provide an adequate basis for review" without an offer of proof.).

Maloney's objections during trial based on insufficient time to play the video cross-examination of Dr. Brassfield lacked detail, but the trial court allowed him to submit as an offer of proof a transcript of Dr. Brassfield's deposition. Hence, we next consider whether error, if any, concerning omission of Dr. Brassfield's cross-examination was harmless.

### 7. Whether Any Error Was Harmless

Ultimately, a reviewing court must determine whether any error in imposing time limits was harmless. *See Duquesne Light Co.*, 66 F.3d at 611 ("Nevertheless despite our concern about the district court's action, we will not reverse because we are unable to conclude that its ruling had any impact on the outcome of the case."). Error is harmless where the appellant cannot demonstrate prejudice as a result of the time limits. *See Ingram*, 125 P.3d at 698 ("Husband must also show some harm as a result of the court's time limitations."); *see generally* C.R.C.P. 61.

The trial court did not prohibit Maloney from cross-examining Dr. Brassfield. Rather, before the video deposition was played by the defense, Maloney had used his time otherwise. *Devenyns v. Hartig*, 983 P.2d 63, 69 (Colo.App.1998) ("plaintiff was not precluded from questioning defendant .... [rather] [t]he fact that he chose not to do so ... is not grounds for reversal").

Maloney's citation to *Krutsinger v. People*, 219 P.3d 1054 (Colo.2009), is inapposite because that case did not involve time limits and the court explained that "[i]t does not follow, of course, that every restriction on a defendant's attempts to challenge the credibility of evidence against him ... amounts to federal constitutional error." *Id.* at 1062. *See also Carsell v. Edwards*, 165 Colo. 335, 343, 439 P.2d 33, 37 (1968) ("[U]nless a restriction of cross-examination is so severe as to constitute a denial of that right, the extent to which cross-examination shall be allowed rests within the sound discretion of the trial court.").

■■■ In any event, we are not persuaded that failure to play the cross-examination of Dr. Brassfield "affect[ed] the substantial rights of the parties." C.R.C.P. 61. Contrary to Maloney's argument that he needed to show that Dr. Brassfield was the defendant's father, this fact was mentioned by

both parties in opening statements and in the defendant's direct testimony. Further, because Dr. Brassfield did not treat Maloney for injuries allegedly suffered in the accident, we are unable to conclude that his treatment of Maloney for various pre-accident conditions, which was explained in the video cross-examination, would have substantially influenced the outcome of a case involving numerous other medical witnesses. *See In re Marriage of Tatum,* 653 P.2d 74, 76 (Colo.App. 1982) ("[T]he record reveals that husband's substantial rights were not affected by the ruling; hence, the error was harmless.").

Accordingly, we conclude that error in rigidly adhering to imposed time limits, if any, was harmless.

## II. Use of Preservation Depositions When Witnesses Were Available

On August 20, 2008, months past the discovery deadline, Brassfield filed "Notice[s] of Video Trial Preservation Testimony" for Dr. Brassfield and Dr. Galloway. At Dr. Brassfield's deposition on September 11, he admitted that he was available to testify at trial. On September 22, the day before Dr. Galloway's scheduled deposition, Maloney's counsel learned that he was likewise available. He immediately moved for a protective order regarding use of the video depositions, requesting "that ... these witnesses ... be called as live witnesses at trial." On October 8, Maloney moved to strike the video depositions.

Maloney's counsel did not attend the initial deposition of Dr. Galloway because of his pending motion. The court later ordered a second deposition of Dr. Galloway, which both parties attended.[1]

The trial court did not reach the merits of Maloney's objection to the video depositions, instead concluding that it was untimely because Maloney had ample prior notice of the Galloway deposition. Maloney's motion asserted that he assumed the Galloway deposition had been noticed because of the doctor's unavailability at trial, and learned otherwise

shortly before the deposition. Brassfield never disputed when Maloney had learned of Dr. Galloway's availability and the court made no finding concerning this assertion. For reasons set forth in the following subsection of this opinion, we conclude that the assumption was justified, and therefore we do not agree that Maloney's objection was untimely. Nevertheless, while we agree with Maloney that the use of "preservation" depositions here violated C.R.C.P. 32, we further conclude that any error was harmless.

## A. Violation of Rule 32

Maloney contends the trial court erred in allowing the video depositions to be played at trial in lieu of having these doctors testify. Brassfield replies that video depositions were admitted pursuant to C.R.C.P. 32(a)(3)(F), or alternatively should be allowed to promote judicial efficiency. We agree with Maloney.

"[T]he trial court's rulings concerning the admission of depositions pursuant to C.R.C.P. 32 will not be disturbed absent an abuse of ... discretion." *Stoczynski v. Livermore,* 782 P.2d 834, 835 (Colo.App.1989).

C.R.C.P. 32 provides for the use of depositions at trial as follows:

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

· · ·

(B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or

· · ·

(F) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

---

1. The first deposition resulted in sanctions which are the subject of a separate appeal. *See Kordick and McCormick v. Brassfield,* 2010 WL 3584542 (Colo.App.2010) (not published pursuant to

C.A.R. 35(f)). For purposes of this appeal, any discussion of Dr. Galloway's deposition refers to the deposition that was ordered by the court and which Maloney's counsel attended.

*See Margenau v. Bowlin,* 12 P.3d 1214, 1218 (Colo.App.2000) ("In order to be introduced into evidence under C.R.C.P. 32 ... one of five circumstances [under (a)(3)] must be present.").

■ The requirement of unavailability in C.R.C.P. 32 "addresses hearsay concerns attendant to the trustworthiness of a witness' out-of-court statements and protects the opposing party from surprise. Only if a witness is unavailable such that his or her testimony would be excluded altogether can the deposition become an exception to the hearsay rule." *Devenyns,* 983 P.2d at 69.

■ "In order that a deposition may be admitted into evidence, the party offering the deposition must make a sufficient showing of the unavailability of the deponent at the time of trial." *Evans v. Century Cas. Co.,* 159 Colo. 596, 601, 413 P.2d 457, 460 (1966). The party offering the deposition in lieu of live testimony has the burden of proof as to witness unavailability. *Rowland v. Ditlow,* 653 P.2d 61, 62 (Colo.App.1982).

■ Here, both witnesses acknowledged that they were available to testify at trial. Brassfield concedes the video depositions were scheduled for convenience. *See Stoczynski,* 782 P.2d at 835 (trial court properly excluded witness's deposition where counsel "admitted that the decision not to call the expert [live] was of a purely tactical nature" and "did not assert that the witness was actually unavailable"). Therefore, the depositions could not have been admitted over Maloney's objection, and should not have been taken.

Further, C.R.C.P. 32(a)(3)(F) is inapplicable because the discovery deadline had passed and Brassfield did not apply to the court before noticing the depositions. *See Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556, 559 (S.D.Cal.1999) (discerning no difference between a trial and discovery deposition and concluding that "if a party wishes to introduce deposition testimony at trial, that testimony should [be] procured during the time set by the court to conduct discovery absent exceptional circumstances" such as a witness having moved outside of court's subpoena power or having "become[ ]

seriously ill and is physically unable to testify at trial").

Nor did Brassfield demonstrate "exceptional circumstances." *See Miller v. Solaglas California, Inc.,* 870 P.2d 559, 569–70 (Colo. App.1993) (allowing introduction of videotaped deposition, in part, under exceptional circumstances exception because the plaintiff had expended significant resources to depose witness, who resided out of state at time of deposition). His suggestion that video depositions are proper merely for convenience ignores the admonition in C.R.C.P. 32(a)(3)(F) to give "due regard to the importance of presenting the testimony of witnesses orally in open court." No doubt, most witnesses find appearing in court to testify at a time determined by an attorney or the court inconvenient.

Accordingly, we conclude that the trial court erred in admitting the preservation depositions in lieu of live testimony.

### B. Harmless Error

■ We further conclude that any error in allowing the video depositions to be played was harmless. Maloney does not explain, nor did he make an offer of proof, how the live testimony of the doctors would have differed from their video depositions. *See Miller,* 870 P.2d at 570. And the trial court did not preclude Maloney from subpoenaing them. *See id.*

Maloney's argument that playing his video cross-examination of Dr. Galloway took too much of his remaining time is unavailing. Maloney's edited video cross-examination of Galloway lasted 13.5 minutes. After it was played, he had approximately 1 hour and 25 minutes remaining. Even if cross-examination of Dr. Galloway in person might have been shorter, the difference would have been de minimis.

### III. Surveillance Video

On June 16, 2005, the parties filed with the trial court a stipulation that provided, in relevant part, "No activity videos of the Plaintiffs shall be introduced into evidence at the trial of this matter, or referred to at the trial of this matter." On June 29, the trial

was continued on Maloney's motion and over Brassfield's objection. The motion had not been pending when the stipulation was filed.

On June 27, Maloney moved the trial court to limit any admission of surveillance videos because "[Maloney] is under the impression that no surveillance information will be brought into evidence and ... clarif[ies] that point in advance of trial." Brassfield responded that the stipulation should not apply to any surveillance videos "that may be created or developed in the future." The trial court agreed with Brassfield, limited the stipulation to surveillance videos made before the stipulation, and explained that

Since the Plaintiffs requested a continuance in this matter, which the court granted on June 29, 2005, any future surveillance videos, or activity videos of the Plaintiffs, which may be taken, or which may come into existence, are not covered by the stipulation of the parties, or by this order.

In April 2008, Brassfield submitted to the court and Maloney an edited, 50–minute surveillance video, made after the stipulation, showing Maloney mowing his lawn and washing his truck. The court allowed this video to be shown to the jury during the November 2008 trial.

On motion just before trial, Maloney objected to introduction of the surveillance video. Brassfield responded that the video would be relevant to impeach Maloney's testimony about his injuries and to form a basis, in part, for defense expert opinions. The trial court allowed the video under the expert opinion argument, but concluded that the impeachment argument could not be ruled on until trial.

Maloney renewed his objection to the admission of the surveillance video in his motion for a new trial. In denying that motion, the trial court explained:

Having heard the evidence presented by Plaintiff on his claims of physical injuries and the severity of his claimed physical limitations, the Court remains satisfied the surveillance video of Plaintiff's physical activities was highly relevant. While the evidence was prejudicial to Plaintiff's case (as relevant defense generally is), it was not unfairly prejudicial and carried no risk

of confusing, misleading, or distracting the jury. No grounds existed for exclusion of the surveillance video.

## A. Stipulation

"Stipulations are a form of judicial admission," and "are binding on the party who makes them." *Northwestern Nat'l Cas. Co. v. State*, 682 P.2d 486, 489 (Colo. App.1983). "Generally speaking, counsel may stipulate as to evidentiary matters such as the admission, exclusion, or withdrawal of evidence from consideration." *Bd. of County Comm'rs v. Tenbrook*, 491 P.2d 597, 600 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)).

Courts should give effect to stipulations, but "if there is a sound reason in law or equity for avoiding or repudiating a stipulation, a party is entitled to be relieved from its requirements upon timely application." *Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co.*, 698 P.2d 1340, 1346 (Colo.1985). Whether to relieve a party of a stipulation is within the discretion of the trial court. *Id.*

Here, the record supports the trial court's exercise of discretion in affording Brassfield relief from the plain language of the stipulation. During the hiatus between the stipulation and the new trial date, which was over three years, Maloney's physical condition might have improved, and if so, a surveillance video could have been very probative. *See People v. Armijo*, 179 P.3d 134, 137–38 (Colo.App.2007) (surveillance videos may be admitted in discretion of trial court where relevant to the issues and properly authenticated). Under these circumstances, a literal interpretation of the stipulation would have frustrated the search for truth. *Cf. People v. Cobb*, 962 P.2d 944, 949 (Colo. 1998) (exclusion of evidence is a drastic remedy and therefore is highly disfavored).

In any event, the trial court limited the stipulation years before the trial. Hence, Maloney had notice that he was at risk of being surveilled. Under these circumstances, we discern no prejudice.

## B. Relevancy

"Rulings on the relevancy of evidence are within the sound discretion of the

trial court and will not be disturbed on review absent an abuse of discretion." *In re L.F.*, 121 P.3d 267, 271 (Colo.App.2005).

 The trial court's determination that the surveillance video was relevant is supported by the record because the nature and extent of Maloney's injuries were hotly contested and at least one of his experts had testified that he was totally disabled. *See People v. Cauley*, 32 P.3d 602, 608 (Colo.App. 2001) (video evidence relevant, under CRE 401, "when it has any tendency to make a fact in issue more or less probable than it would have been without the introduction of the evidence").

Accordingly, we conclude that the trial court did not abuse its discretion by admitting the surveillance video.

### C. Other Contentions

Maloney's argument that the surveillance video was admitted improperly for impeachment, because he testified to having done the activities shown in the video, is unavailing in light of the trial court's ruling that the evidence was relevant. Because the trial court found the surveillance video to be relevant, we need not address Maloney's contention that Brassfield's experts did not rely on the video.

Maloney's contention that the evidence in the video qualified as scientific evidence requiring an inquiry under *People v. Shreck*, 22 P.3d 68, 78 (Colo.2001), is unpersuasive. Maloney cites no authority, nor have we found any, holding that the jury needed an expert to contrast his activities shown in the surveillance video with his claims of incapacity. Maloney's citation to *People in Interest of R.D.S.*, 183 Colo. 89, 514 P.2d 772 (1973), which addressed the need for expert testimony when demonstrating resemblance in a paternity action, is inapposite.

The judgment is affirmed.

Judge RUSSEL and Judge GABRIEL concur.