In re the MARRIAGE OF Victoria ZAPPANTI, Appellee,

and

Larry J. Zappanti, Sr., Appellant.

No. 02CA0918.

Colorado Court of Appeals, Div. 1.

June 19, 2003.

Rehearing Denied Aug. 14, 2003.

Certiorari Denied Dec. 1, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Devon A. McFarland, Trinidad, Colorado, for Appellee.

Rodolfo Reveles, P.C., Rodolfo Reveles, Trinidad, Colorado, for Appellant.

William L. Carew, Colorado Springs, Colorado, Amicus Curiae.

Opinion by Judge TAUBMAN.

Larry J. Zappanti, Sr. (husband) appeals from the trial court's permanent orders entered in connection with the dissolution of his marriage to Victoria Zappanti (wife). We affirm in part, reverse in part, and remand for further proceedings.

The decree terminating the parties' twenty-three-year marriage was entered on January 22, 2002. The permanent orders hearing occurred in February, and the court signed the written orders on March 13, 2002.

Among other provisions, wife received her PERA retirement pension and was assigned responsibility for various marital debts. Husband also received his entire railroad pension, which included a current benefit of $2031 per month, and was assigned liability for the remaining marital debt.

The trial court allocated sole decision-making authority for the parties' minor child to wife and ordered husband to pay child support in the amount of $358 per month.

Husband challenges the trial court's valuation of wife's pension, the classification of his retirement, the valuation of the marital portion of his pension, and the calculation of child support. We find no reversible error as to the wife's pension and child support, but we reverse as to husband's railroad pension.

I.

■ Husband first contends that the trial court erred as a matter of law in valuing wife's PERA retirement fund based solely upon the amount of her contributions. We agree that the court erred in its valuation, but find no basis for reversal.

In its bench order, the trial court found that wife's PERA retirement was vested, but not matured, and therefore, if she left her job, the only money she could withdraw would be the amount of her contributions. Wife had testified that she had contributed $60,349.22 to her PERA fund. That same amount was listed as the value on her financial affidavit. The court, basing its valuation on wife's contributions, found that her PERA fund was worth $60,000.

Because PERA combines elements of defined benefit and defined contribution plans, the present value of a PERA account cannot be based purely upon the contributions as of the date of dissolution. Rather, a determination of present value requires application of a series of actuarial and investment assumptions relating to the employee's life expectancy and probable retirement age to the contractual or statutorily awarded benefit. *In re Marriage of Kelm*, 912 P.2d 545 (Colo. 1996).

Thus, it appears that the trial court erred in valuing wife's pension based solely upon her contributions. However, we conclude that husband acquiesced in this error.

■ Normally, the valuation of future retirement payments is the subject for expert testimony, usually from an actuary. *Perry v. Perry*, 133 Mich.App. 453, 350 N.W.2d 275 (1984). It is the parties' duty to present the trial court with the requisite data that would allow it to make a sufficient valuation of the retirement fund, and any failure by the parties in that regard should not provide them with grounds for review. *In re Marriage of Smith*, 114 Ill.App.3d 47, 69 Ill.Dec. 827, 448 N.E.2d 545 (1983). Accordingly, a party who fails to present sufficient evidence at trial should not be allowed on appeal to challenge the inadequacy of the evidence. *Hartland v. Hartland*, 777 P.2d 636 (Alaska 1989).

Here, not only did husband fail to present any evidence of the value of wife's PERA pension, he also made no objection or argument challenging wife's valuation during the permanent orders hearing. In addition, husband's counsel informed the trial court that his client was eager to have the proceeding concluded and stated that he felt comfortable with the court resolving the issues based on the information before it.

■ A trial court is required to find the approximate current value of all property owned by the parties. *In re Marriage of Weaver*, 39 Colo.App. 523, 571 P.2d 307 (1977). Here, the trial court fulfilled that obligation by relying upon the only evidence available to it. *See In re Marriage of Eisenhuth*, 976 P.2d 896 (Colo.App.1999)(in reach-

ing an equitable division of marital property, the court is required to consider the evidence before it). Given husband's failure to contest wife's valuation or present any evidence whatsoever, including any evidence of a valuation conforming to the requirements set forth in *In re Marriage of Kelm, supra,* we hold that the trial court's error provides no basis for reversal. *See Hartland v. Hartland, supra* (by not raising at trial the calculation he advocated for the valuation of wife's pension, husband waived his right to contest the issue on appeal); *see also In re Marriage of Eisenhuth, supra* (trial court properly based its valuation of property upon the limited evidence before it, which consisted of wife's testimony and financial affidavit).

## II.

Husband next argues that the trial court erred in classifying, valuing, and dividing his railroad retirement. We agree.

 Under the Uniform Dissolution of Marriage Act, § 14–10–101, et seq., C.R.S. 2002, a court must make an equitable division of marital property after considering all relevant factors. In making this division, the court must first determine whether an interest constitutes property; if so, the court must then determine whether the property is marital or separate. *In re Marriage of Hunt,* 909 P.2d 525 (Colo.1995). Once property has been deemed to be marital, the court must value the property. *In re Marriage of Balanson,* 25 P.3d 28 (Colo.2001).

 Errors by the trial court in determining the property division are reversible only when overall they affect the parties' substantial rights. In determining whether the substantial rights of the parties have been affected, a reviewing court must consider the trial court's overall property distribution. *See In re Marriage of Balanson, supra.*

 An error affecting only a small percentage of the overall marital estate is harmless, whereas an error affecting a large percentage of the marital estate requires remand of the case to the trial court to correct such errors. *In re Marriage of Balanson, supra.*

## A.

 Husband initially contends that the trial court erred as a matter of law by classifying his entire railroad retirement benefits as marital property. He refers to several out-of-state cases, and the United States Supreme Court decision in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), in explaining that the benefits he receives are divided into two categories: Tier I benefits, which under controlling federal law are not considered marital property subject to division; and Tier II benefits, which can be classified as marital property subject to distribution. Husband maintains that the trial court did not distinguish between these two types of benefits and exceeded its jurisdiction in treating Tier I benefits as marital property. We agree.

At the permanent orders hearing, the general counsel of the Railroad Retirement Board testified that husband received a monthly railroad pension or annuity of $2,031. Of that amount, he explained, $1,354 was a Tier I benefit not divisible as marital property, while the remaining $677 would be divisible because it was a Tier II benefit. The $677, he stated, would have been received by family members if husband's earnings were subject to the Social Security Act. That amount was attributable to the parties' son, but was paid directly to husband.

In addition, the general counsel explained that when the parties' son became emancipated, husband would receive a Tier I benefit of $1,354 per month plus a reduced Tier II benefit of $286 per month. Finally, he testified that either the entire amount, or at a minimum the $286 component, was subject to annual cost of living increases.

In closing arguments, wife's counsel urged that a present value be applied to the Tier II benefit using the mortality tables listed in § 13–25–102, C.R.S.2002. Husband's counsel stated that he was unable to obtain a value for the retirement benefits and that he would accept the court's finding on that issue. In its bench order, the trial court found that the present value of the entire retirement exceeded $600,000, that the child's portion of the monthly benefit had a net present value

of at least $50,000, and that based upon husband's projected life expectancy of twenty-nine years, his Tier II benefit would have a net present value of approximately $100,000. The court then concluded that the entire railroad pension was a marital asset and awarded it to husband. In reaching this conclusion, the trial court erred.

Although husband's counsel stated during the permanent orders hearing that he would rely on the trial court's determination of the value of the railroad retirement annuity, he did not concede that all of the railroad retirement benefits were marital property. Further, in husband's post-trial motion, he requested that the trial court amend its findings and judgment with respect to the railroad pension. At a later status conference, husband's counsel emphasized that he was not requesting the court to hear further evidence as to the railroad retirement pension. Accordingly, we conclude that husband sufficiently raised before the trial court the issue as to whether any or all of the railroad retirement pension was marital property.

Further, although the testimony presented by the general counsel of the Railroad Retirement Board was sparse, it indicated that only $677 of husband's $2,031 monthly annuity was divisible as marital property. Thus, there was a sufficient basis for the trial court to determine that a significant portion of the railroad retirement annuity was separate property not subject to division.

This conclusion was properly supported by husband's reference to *Hisquierdo v. Hisquierdo, supra,* and *Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414 (1997). In *Hisquierdo,* the United States Supreme Court explained that under the Railroad Retirement Act of 1974, 45 U.S.C. § 231, et seq., two tiers of benefits are provided, which resemble both a private pension program and a social welfare plan. Tier I benefits are equivalent to those the employee would have received if covered by the Social Security Act, 42 U.S.C. § 401, et seq. Tier II benefits are supplemental annuities, which, like a private pension plan, are tied to earnings and career service. *See* 45 U.S.C. § 231a(b); *Lee v. Lee,* 727 So.2d 622 (La.Ct.App.1998).

In *Hisquierdo,* the Supreme Court interpreted the anti-attachment laws of the Railroad Retirement Act, 45 U.S.C. § 231m, as preempting a state court from dividing railroad retirement benefits in a dissolution of marriage action. In *Pearson,* the court explained that in 1983, Congress amended the Railroad Retirement Act to provide that Tier II benefits were property subject to distribution upon divorce, *see* 45 U.S.C. § 231m(b)(2), but that Tier I benefits remained exempt from division.

Thus, that portion of husband's railroad retirement benefits which was received pursuant to Tier I was separate property, and the trial court was required to state that specifically. Additionally, as discussed in part C below, a portion of the Tier II benefits was marital property subject to division.

Given the trial court's conclusion that husband's retirement benefits had a value in excess of $600,000, it was incumbent upon the court to determine what portion of that was marital property. Approximately two-thirds of husband's railroad retirement pension, or $400,000, was separate property. The remaining $200,000 was subject to division as marital property. Because of the magnitude of this error in calculation, we conclude that it affected the substantial rights of the parties and that this matter must be remanded to the trial court for reconsideration of the division of marital property. *See In re Marriage of Balanson, supra.*

## B.

■ Nevertheless, we reject husband's contention that the trial court erred as a matter of law by distributing his pension using the net present value method.

■ The choice of distribution method for pension benefits depends upon the particular needs and circumstances of the parties and lies within the sound discretion of the trial court. *In re Marriage of Hunt, supra.* Under the net present value method, the pension is valued as of the date of dissolution and distributed immediately with an offset against other property in the marital estate. Under the remaining two methods, deferred distribution and reserve jurisdiction, distri-

bution is delayed until benefits are received. *In re Marriage of Casias*, 962 P.2d 999 (Colo. App.1998).

The crux of husband's contention is that the trial court had insufficient evidence before it to determine the present value of his retirement. In support, he notes that his counsel asked wife's witness whether he could place a present value on the retirement and the expert replied that he could not, but he thought an actuary could.

As we previously noted, husband's counsel had informed the court that he would be satisfied with the court's finding as to valuation of the retirement. Additionally, he specifically noted the paucity of information presented to the court. He did not assert that he was prevented from obtaining and showing a present value through an actuary, but simply explained that he "made a few phone calls" and was not "able to learn enough to put a value on it." Counsel stated that he had accepted the value placed on the retirement by wife's counsel.

Although that value was not clearly identified in that particular exchange, the record indicates that wife's counsel submitted a computer-generated calculation of the present value of the retirement. While we do not have any documentation of that value in the record on review, the trial court's bench order nevertheless reflects that the court calculated a present value using the mortality table in § 13–25–103. Consequently, we are satisfied that the trial court had sufficient information before it to apply the net present value method. *See In re Marriage of Plesich*, 881 P.2d 379 (Colo.App.1994)(in dissolution actions, a trial court has discretion to arrive at its own determination of value, and its valuation will be upheld if it is reasonable in light of the evidence as a whole).

We further note that because husband was currently receiving benefits, the remaining distribution methods would have been inappropriate.

On remand, the trial court must apply the net present value method to that part of the railroad retirement pension determined to be marital property.

### C.

■ Husband also contends that the trial court erred in failing to apply the coverture fraction to determine the marital portion of his Tier II benefits. We agree that the trial court was required to apply the coverture fraction, and on remand it must do so.

■ Under all three methods of distribution, the accepted means of calculating the marital share of a pension is to multiply the present value of the pension by the coverture fraction, which is the number of years or months that benefits accumulated during the marriage divided by the total number of years or months that benefits accumulated. *In re Marriage of James*, 950 P.2d 624 (Colo. App.1997).

Here, although neither party advised the court that it needed to apply the coverture fraction in valuing husband's retirement or indicated that husband's premarriage service was significant, testimony was nevertheless elicited from husband indicating that the parties married in 1978, that husband began his employment in 1973, and that he stopped working in 1989 when his injury occurred. This information was sufficient for the trial court to determine the applicable coverture fraction.

### III.

Finally, we disagree with husband's contention that the trial court erred in calculating his child support obligation.

■ The trial court based the child support calculation on husband's monthly income from his railroad annuity. Husband complains the calculation was improper because that income was from a previously divided asset. However, the fact that the retirement represented a property interest subject, at least in part, to division does not change its status as an income source to be considered in determining his child support obligation. *See* § 14–10–115(7)(a)(I)(A), C.R.S.2002 ("gross income" includes income from any source including, but not limited to, income from pension and retirement benefits); *see also In re Marriage of Fain*, 794 P.2d 1086 (Colo.App.1990)(whether or not a structured

personal injury settlement is classified as a separate or marital asset, payments received pursuant to that settlement are gross income for determination of child support).

Husband also argues that the trial court should have offset his support obligation against the benefit amount he receives on behalf of the child. However, because husband retains the payments and is the noncustodial parent, he was not entitled to an offset. *See* § 14–10–115(16.5), C.R.S.2002; *see—also In re Marriage of Quintana,* 30 P.3d 870 (Colo.App.2001)(offset properly given to husband where Social Security payments for his disability were paid to wife, as the custodial parent, and actually diminished the needs of the children).

Pursuant to § 14–10–113(1)(c), C.R.S.2002, and *In re Marriage of Wells,* 850 P.2d 694 (Colo.1993), the trial court on remand must consider the economic circumstances of the respective spouses at the time of any further hearing in this matter.

We deny husband's request for attorney fees under C.A.R. 38(d).

The judgment is affirmed with respect to the valuation of wife's pension and the calculation of child support. The judgment classifying, valuing, and dividing husband's retirement benefits is reversed, and the case is remanded for further proceedings consistent with this opinion to reconsider the property division.

KAPELKE and PIERCE *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

* Justice HOBBS and Justice MARTINEZ would grant as to the following issue: