23CA0831 Marriage of Simonson 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0831 Weld County District Court No. 20DR30492 Honorable W. Troy Hause, Judge In re the Marriage of Andrew Simonson, Appellant, and Bonnie Simonson, Appellee. JUDGMENT AFFIRMED Division A Opinion by CHIEF JUDGE ROMÁN Bernard* and Richman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant Divorce Matters, LLC, Justin J. Oliver, Greenwood Village, Colorado, for Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Andrew Simonson (husband) appeals the district court’s judgment that dissolved his marriage with Bonnie Simonson (wife). We affirm. I. Permanent Orders ¶ 2 The parties married in 1998. After wife initiated the dissolution proceeding, the district court appointed Lauren Long to value AJ’s Backflow Testing, LLC, a business owned and operated by husband. Long opined that, as of December 2020, the value of the business was $1,221,000. ¶ 3 In 2023, the court dissolved the marriage and entered permanent orders. In dividing the marital estate, the court accepted Long’s opinion on the value of the business and allocated it to husband. The court divided the remaining marital assets and debts, which resulted in each party receiving a relatively equal share of their over $2 million estate. ¶ 4 Moving to maintenance, the court found that wife was earning $2,306 per month, and it denied husband’s claim that she was voluntarily underemployed as a part-time in-home healthcare provider. The court found that husband’s total gross income was $14,015 per month, which included his salary, his share of the 
2 business’ income, and additional business funds husband used to pay personal expenses. The court awarded wife maintenance in the amount of $3,167 per month. II. AJ’s Backflow Testing’s Value ¶ 5 Husband contends that the district court erred by accepting Long’s business value. We discern no error. A. Preservation ¶ 6 As an initial matter, we reject wife’s assertion that husband did not preserve this issue for appellate review. Husband objected to Long’s valuation in the joint trial management certificate, he contested her opinion at the permanent orders hearing, and the court ultimately ruled on the issue. See In re Marriage of Martin, 2021 COA 101, ¶ 13 (recognizing that all that is required to preserve an issue for appeal is that the issue be brought to the court’s attention, so it has an opportunity to rule on the matter). B. Applicable Law ¶ 7 A court has great latitude to equitably divide the marital estate based on the facts and circumstances of each case, and we will not disturb its decision absent a showing that it acted in a manifestly 
3 arbitrary, unreasonable, or unfair manner, or it misapplied the law. In re Marriage of Medeiros, 2023 COA 42M, ¶ 28. ¶ 8 The court must determine the approximate current value of marital property. In re Marriage of Wright, 2020 COA 11, ¶ 4; see also § 14-10-113(5), C.R.S. 2023 (directing the court to value property as of the date of the permanent orders hearing when the hearing occurs before the entry of the dissolution decree). The court may select one party’s proposed value over that of the other party, or it may determine its own reasonable value. Medeiros, ¶ 41. We will not disturb the court’s value determination if it is reasonable in light of the evidence as a whole. Id. ¶ 9 It is the parties’ duty to present the court with sufficient data so that the court can make a reasonable property valuation. In re Marriage of Krejci, 2013 COA 6, ¶ 23. Any failure by the parties to do so does not provide them with grounds for reversal. Id.; In re Marriage of Zappanti, 80 P.3d 889, 892-93 (Colo. App. 2003). C. Discussion ¶ 10 At the hearing, Long testified that following her July 2021 appointment, she “got stuck on the document request portion” for her valuation. She explained that in October 2021, she received the 
4 business’ 2018 through 2020 tax returns, but despite repeated requests to husband for additional financial information over the next seven months, she received nothing else from him. She further testified that in May 2022, she informed the parties that in the absence of any other information, she would prepare her valuation based solely on the business’ tax returns. She also informed them that they could provide additional information, but nothing more was produced. ¶ 11 Long then opined that from the financial information husband disclosed, $1,221,000 was her “best estimate” for the business’ value. She testified that if she had received more information from husband, she believed “it would have resulted in a higher value,” and that she suspected husband did not fully disclose all the business’ income. She said that her valuation was “the lowest possible number because it’s based on the only information that [husband] would let [her] see.” ¶ 12 The court found Long “very credible” and said that her valuation was “the most credible evidence available to the [c]ourt regarding the value of the business.” The court also agreed that, in light of the evidence, the business, if anything, may be worth more 
5 than $1,221,000. The court then accepted Long’s value for AJ’s Backflow Testing. ¶ 13 Husband argues that the court was wrong to value the business based on Long’s outdated and incomplete valuation. He highlights that even Long acknowledged that she did not adhere to her normal procedures when valuing the business. But the court found, with record support, that husband failed to fully disclose financial information to Long and that he created the problems he now complains of in her valuation. And husband did not present an alternate valuation for the business. See Krejci, ¶ 23; Zappanti, 80 P.3d at 892-893. The court thus made a reasonable value determination based on the evidence. See Medeiros, ¶ 41. ¶ 14 Husband also argues that Long’s methodology was flawed, she did not consider recent legislative changes that may impact the business, and she conducted the valuation in the middle of the COVID-19 pandemic. But “[t]he weight to be given to valuation techniques used by experts is for the [district] court to decide.” In re Marriage of Nevarez, 170 P.3d 808, 812 (Colo. App. 2007). Therefore, it was for the court to determine the weight, probative force, and sufficiency of Long’s valuation, as well as the inferences 
6 and conclusions to be drawn therefrom in determining the value of husband’s business. See In re Marriage of Thorburn, 2022 COA 80, ¶ 49. We are not at liberty to re-evaluate the conflicting evidence and set aside the court’s determination when, as here, it was reasonable in light of the limited evidence presented. See Medeiros, ¶ 41; In re Marriage of Evans, 2021 COA 141, ¶ 45. ¶ 15 The district court therefore did not err by finding that the value of AJ’s Backflow Testing was $1,221,000. III. Maintenance ¶ 16 Husband next challenges the district court’s maintenance award, arguing that the court’s income findings were not supported by the record and that the court did not make the necessary findings in support of its award. We reject his contentions. A. Standard of Review ¶ 17 We may not disturb a court’s maintenance determination unless it is shown to be manifestly arbitrary, unfair, or unreasonable, or based on a misapplication of the law. See Medeiros, ¶¶ 28, 58. 
7 B. Wife’s Income ¶ 18 Husband contends that the district court erred by finding that wife was not voluntarily underemployed and declining to impute an income commensurate with full-time employment. We disagree. ¶ 19 When determining maintenance, the court must determine each party’s income, which generally means their actual gross income. § 14-10-114(3)(a)(I)(A), (8)(a)(II), C.R.S. 2023. But if the court finds that a party is voluntarily underemployed, the court determines maintenance based on that party’s potential income. § 14-10-114(8)(c)(IV). A party is voluntarily underemployed when they shirk their support obligations by unreasonably forgoing employment. See In re Marriage of Collins, 2023 COA 116M, ¶ 29; see also In re Marriage of Garrett, 2018 COA 154, ¶ 10 (“Imputation of income is an exception . . . and should be applied with caution.”). ¶ 20 The court has broad discretion in determining income, and we generally will not disturb the court’s finding when it is supported by the record. Collins, ¶ 30; see also Garrett, ¶ 9 (recognizing that we review de novo the court’s application of the law to the facts). ¶ 21 Wife testified that, during the marriage, she primarily raised their children and worked part-time as a healthcare provider from 
8 her home. She also said that she had not worked full-time since early in the marriage. Wife then testified that she was presently employed as an in-home healthcare provider, worked about twenty-nine hours per week, and earned $18.35 per hour. She described having specific clients that gave her a guaranteed number of hours per week, which she said was hard to find in her profession. Wife said that she would be willing to work more hours, but her employer had not offered any additional shifts to her at a time when she was not already caring for her current clients. And she testified that her employer had not offered her the opportunity to work full time. ¶ 22 The court credited wife’s testimony and found that she was not voluntarily underemployed. It explained that although she was physically capable of working a full-time schedule, she had not worked forty hours per week in over twenty-one years, which dampened her prospects of getting a full-time job. It further explained that she had secured a job in her area of expertise and her current employer did not have a full-time schedule available for her. The court found that wife’s job reasonably suited her experience and capabilities and that no evidence showed that she 
9 had the opportunity to work full time. It determined that based on her earnings for twenty-nine hours per week, her gross income was $2,306 per month. ¶ 23 Given the record support for the court’s determination, we may not disturb it. See Collins, ¶ 30. Although husband suggests that other evidence at the hearing conflicted with the court’s finding, it was for the district court, not us, to resolve those conflicts. See In re Marriage of Tooker, 2019 COA 83, ¶ 31; see also Evans, ¶ 45. ¶ 24 The court therefore did not err by finding that wife was not voluntarily underemployed. C. Husband’s Income ¶ 25 We also reject husband’s contention that the district court improperly included additional business funds he used for his personal expenses when it found that his gross income was $14,015 per month. ¶ 26 Gross income for purposes of maintenance means income from any source. § 14-10-114(8)(c)(I). For a self-employed party, gross income equals gross receipts minus ordinary and necessary expenses. § 14-10-114(8)(c)(III)(A). Gross income also includes a 
10 party’s salary and “[a]ny moneys drawn by a self-employed individual for personal use that are deducted as a business expense.” § 14-10-114(8)(c)(I)(A), (O), (W). ¶ 27 The court noted that husband claimed his income was $8,386 per month, which represented an average of his annual salary and share of the business’ income from 2019 through 2021. (Husband reported annual earnings of $138,215 in 2019, $106,587 in 2020, and $57,126 in 2021.) However, the court determined that this amount did not adequately represent his actual gross income. ¶ 28 First, while the court agreed that averaging husband’s salary and business income was appropriate, it found that husband’s 2021 earnings were not a true representation of his income. It explained that the COVID-19 pandemic may have caused a minor dip in the business’ earnings and that the business would likely recover given its relatively stable nature. The court also hesitated to accept husband’s reported income during the pendency of the dissolution proceeding, “particularly considering the conduct of [h]usband throughout [the] case.” The court averaged husband’s annual earnings in 2019 and 2020 and found that he had an annual gross income of $122,401 or $10,200 per month. 
11 ¶ 29 Then, the court found that both parties described that husband frequently used business funds to pay personal expenses, which he would later deduct as business expenses. The court noted that in 2020, AJ’s Backflow Testing reported over $261,000 in business deductions, and it found that at least some of these deductions were for personal expenses that must be included in husband’s gross income. The court acknowledged that, given the limited evidence on the business’ finances, it was “impossible to know exactly how much” of that amount husband spent on his personal expenses, but it said that it could create a clear enough picture to determine a reasonable amount from the available evidence. ¶ 30 In doing so, the court looked at husband’s sworn financial statements. The court noted that in his first sworn financial statement husband reported a gross income of $14,015 per month. The court also noted that the parties testified that husband used business funds to pay for groceries, utilities, gas, and phone bills at a minimum. It then reviewed husband’s most recent sworn financial statement and found that he represented spending $3,587 per month on these expenses. The court found that husband also 
12 testified he paid about $300 per month for his phone. From this, the court determined that husband admitted to spending roughly $3,887 per month from the business on personal expenses. And it noted that evidence showed that he used business funds to pay even more personal expenses. ¶ 31 The court concluded that when considering the money husband acknowledged using on personal expenses (about $3,800 per month) and his average salary and business income ($10,200 per month), it was reasonable to use the gross income he reported on his initial sworn financial statement and determined that his income was $14,015 per month. ¶ 32 The record supports the court’s decision to average husband’s salary and business income as well as its finding that he used business funds for personal expenses. See § 14-10-114(8)(c)(I)(A), (O), (W); see also In re Marriage of Salby, 126 P.3d 291, 299 (Colo. App. 2005) (noting that the court may use an average of a party’s past income). We therefore will not disturb those determinations. See Collins, ¶ 30. ¶ 33 Still, husband argues that the court improperly determined the amount of the additional business funds used on personal 
13 expenses. He notes that his phone expenses were double counted, certain expenses overlapped with valid business expenses, and some expenses were, in fact, paid with personal funds. Even if we assume that his representations are correct, he fails to establish how he was prejudiced. See C.A.R. 35(c) (“The appellate court may disregard any error or defect not affecting the substantial rights of the parties.”); see also In re Parental Responsibilities Concerning E.E.L-T., 2024 COA 12, ¶ 30 (“An error affects a substantial right only if it substantially influenced the outcome of the case or impaired the basic fairness of the trial.”). The court found that while it was undisputed that husband used business funds for personal use, it had little evidence from which to determine the amount of those funds. See Krejci, ¶ 23; Zappanti, 80 P.3d at 892-893. The court then considered the income husband initially reported ($14,015 per month) and compared that to his most recent reported expenses to create a framework for identifying a reasonable amount of personal expenses he paid with business funds. See Salby, 126 P.3d at 296 (recognizing that a court may rely on a party’s sworn financial statement). The court referenced those expenses to determine whether his previously reported gross 
14 income of $14,015 per month was reasonable; it did not directly include the amount of those expenses in determining his gross income. Moreover, the court identified other personal expenses paid with business funds, which it did not quantify when accepting husband’s previously reported income. The court thus determined a reasonable amount for husband’s gross income based on the evidence presented. See Collins, ¶ 30. ¶ 34 Husband also argues that, in determining his income, the court incorrectly said that it did not admit his 2017 through 2019 personal wage and tax statements and the 2021 business tax return, when the court admitted those exhibits at the hearing. Even if the court incorrectly referenced the non-admission of these exhibits, the court next said that it was “not convinced that consideration of these documents [was] necessary to evaluate [h]usband’s earnings” in light of the other admitted evidence, which included husband’s reported earnings for 2019 through 2021, the business’ 2020 tax return, and husband’s sworn financial statements. The court therefore found these exhibits irrelevant to its income determination. And husband directs us to nothing in those additional exhibits that could have affected the court’s income 
15 finding. Nor does he establish that any error affected his substantial rights. Thus, any misstatement by the court appears harmless. See C.A.R. 35(c). ¶ 35 Husband also says that “[a]ny reliance by the [district] court on Ms. Long’s testimony to calculate [h]usband’s income was improper because Ms. Long did not include an income valuation as part of her report.” But he does nothing to develop this argument. We therefore will not consider it. See In re Parental Responsibilities Concerning S.Z.S., 2022 COA 105, ¶ 29. ¶ 36 The court therefore did not err by finding that husband’s gross income was $14,015 per month. D. Sufficient Findings ¶ 37 Husband contends that the district court failed to make all necessary statutory findings when awarding maintenance. We disagree. ¶ 38 When considering maintenance, the court must first make findings on the parties’ incomes, the distribution of marital property, the parties’ financial resources, the reasonable financial need established during the marriage, and the taxability of any maintenance awarded. § 14-10-114(3)(a)(I). Then, the court must 
16 consider an amount and term of maintenance, if any, that is fair and equitable. § 14-10-114(3)(a)(II). To do so, the court considers advisory maintenance guidelines and a nonexclusive list of statutory factors. § 14-10-114(3)(a)(II)(A)-(B), (3)(b), (3)(c). The court must also determine if the requesting party lacks sufficient property to provide for their reasonable needs and is unable to support themself through appropriate employment. § 14-10-114(3)(a)(II)(C), (3)(d). ¶ 39 Husband does not dispute that the court made the required statutory findings on the parties’ incomes, the distribution of marital property, the parties’ financial resources, and the taxability of maintenance. § 14-10-114(3)(a)(I)(A)-(C), (E). Nor does he challenge the court’s finding that wife met the statutory requirement for maintenance. § 14-10-114(3)(a)(II)(C), (3)(d). ¶ 40 Thus, as to the statutorily required findings, husband only appears to argue that the court failed to address the parties’ reasonable financial need as established during the marriage. See § 14-10-114(3)(a)(I)(D). But the court found that during the marriage, “the parties lived comfortably, holding many large assets and making investments for their future, all with little to no debt.” 
17 It also recognized that husband reported earning over $100,000 per year during the marriage and that wife provided additional income. And it found that wife’s current income ($2,306 per month) would not sufficiently provide for her reasonable needs as established during the marriage. Thus, a review of the court’s ruling demonstrates that it made sufficient findings on this issue. ¶ 41 Husband also suggests that the court did not make findings on all of the section 14-10-114(3)(c) factors when it determined the amount of maintenance. While the court did not address all of the statutory factors, it was not required to do so when, as here, it sufficiently explained the basis of its decision and made findings on the factors it found relevant. See Wright, ¶ 20. ¶ 42 Specifically, the court found that • husband was the primary breadwinner and earned an income of over $14,000 per month, see § 14-10-114(3)(c)(II), (V), (VI); • husband grew his business during the marriage, received the business in the property division, and will continue to earn a relatively consistent income from it, see § 14-10-114(3)(c)(II), (IV), (X); 
18 • husband paid wife $3,000 per month in temporary maintenance during the proceeding, see § 14-10-114(3)(c)(VIII); • wife earned $2,306 per month, sacrificed her ability to grow her earnings in favor of supporting husband, and needed financial support and assistance to get back on her feet, see § 14-10-114(3)(c)(I), (V), (X); and • wife reported expenses ($3,300 per month) that were “fairly bare bones,” and even after alleviating her rental expenses, wife could not meet her reasonable needs as established during the nearly twenty-five-year-marriage with her income or the property allocated to her, see § 14-10-114(3)(c)(I), (III), (VII). ¶ 43 The court then determined that the advisory guideline amount of maintenance ($3,167 per month) was fair and equitable. § 14-10-114(3)(b)(I)(C), (3)(e). ¶ 44 The court thus made the required findings and considered the statutory factors when it awarded wife maintenance. The record supports its determinations, and we therefore will not disturb its maintenance award. 
19 IV. Appellate Attorney Fees and Costs ¶ 45 Wife asks for an award of attorney fees and costs on appeal, arguing that husband’s appeal is frivolous and vexatious. See C.A.R. 38(b); see also § 13-17-102(4), C.R.S. 2023. Even though unsuccessful, we do not agree that husband’s appeal warrants such an award. See Glover v. Serratoga Falls LLC, 2021 CO 77, ¶ 70 (noting that we award such attorney fees only in clear and unequivocal cases of egregious conduct where no rational argument is presented). We therefore deny wife’s request. V. Disposition ¶ 46 The judgment is affirmed. JUDGE BERNARD and JUDGE RICHMAN concur.