24CA1113 Marriage of Haibt 07-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1113
Douglas County District Court No. 21DR30473
Honorable Robert Lung, Judge

In re the Marriage of

Edward C. Haibt,

Appellant,

and

Heather Haibt,

Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

Edward C. Haibt, Pro Se

Hogan Omidi, PC, Kathleen A. Hogan, Chelsea E. Moore, Denver, Colorado, for
Appellee

¶ 1     In this dissolution of marriage case, Edward C. Haibt (husband) claims the trial court erred when it classified houses, trusts, art, and furniture as the separate property of Heather Haibt (wife); distributed the marital property; determined the parties' incomes for purposes of maintenance; demonstrated bias; didn't allocate enough time for the hearing; awarded attorney fees without a separate hearing; and ignored wife's excessive spending and loans.  We disagree and affirm.  We also remand for consideration of wife's request for an award of attorney fees.

## I.     Background

¶ 2     The parties had been married for twenty years at the time of the 2023 permanent orders, and they didn't have children.  They met while husband was on a temporary work assignment in the Gunnison area.  At the time, husband worked for Delta Airlines in customer service, and wife worked for an RV company.  Wife owned and lived in a house in Gunnison (Gunnison house) at that time, and she subsequently moved to Castle Rock near a golf course (Castle Rock house), and husband moved in with her there, but she retained the Gunnison house.

¶ 3 The parties married in 2003, and wife's mother died suddenly two years later. Wife received a significant inheritance following her mother's death, and she decided to sell their Castle Rock house and buy a multi-million-dollar house adjacent to a different golf course in Parker (Parker house). Wife began spending large amounts of time and money on her hobbies, which included sailing and golf.

¶ 4 In 2009 husband left his job in order to be a travelling companion and golf partner to wife. Husband began working again in 2019 as a financial advisor and, during the pendency of the divorce proceedings, took a second job scheduling charter flights for sports organizations.

¶ 5 Wife eventually purchased another house in Arizona solely with money from her trust, and the title to that house was held by an L.L.C. that wife owned. The couple also accrued several expensive golf memberships at luxury golf clubs, seven cars, jewelry, and art and furniture in all three houses.

¶ 6 Wife is the beneficiary of four trusts (Trusts One, Two, Three, and Four). These trusts are almost entirely funded from inheritances wife received following the deaths of members of her family.

¶ 7    Husband filed for divorce in June 2021.  The parties disputed whether any of the trusts contained marital property, so the trial court appointed a special master to determine whether the trusts, any distributions from the trusts, and any assets obtained with trust funds were marital or separate property.  The special master found that the regular payments wife received from the main trust — Trust One — were marital.  The special master also found that Trusts One and Two had gained value during the marriage and recommended that the court find that this appreciation was marital property.  The parties stipulated that Trusts Three and Four didn't contain marital property.

¶ 8    At the permanent orders hearing, both parties requested an award of the bulk of the marital estate.  The court awarded husband forty percent of the marital estate including four of the cars, his retirement accounts, almost all of the furniture in the Gunnison house, and approximately $675,000 in cash.  The court reasoned that husband had sacrificed his career for the marriage and had made noneconomic contributions to the marriage by serving as wife's travel companion and golf partner.  The court awarded wife the rest of the estate, including all three houses, three

cars, and the art and remaining furniture. Finally, the court ordered wife to pay husband maintenance in the amount of $6,000 per month for ninety-seven months.

## II. Issues on Appeal

¶ 9 Husband's appeal consists of twenty-one issues that at times overlap or are repeated. Wife has requested attorney fees and costs because she alleges husband's appeal is frivolous and designed to increase her legal costs. Husband contends that wife's answer brief violated the page limit and requests that the brief be struck.

¶ 10 Because of the number of issues husband presents, we have grouped them according to the steps a trial court must take when issuing permanent orders: (1) identifying any property as marital or separate; (2) dividing the marital property equitably; (3) determining maintenance; (4) determining whether to award attorney fees; and (5) addressing remaining issues. *In re Marriage of de Koning*, 2016 CO 2, ¶¶ 21-23. We have also combined them, when necessary, due to repetition of issues.

¶ 11 First, we address husband's argument that wife's answer brief is too long, then we address his substantive arguments, and lastly we address wife's request for attorney fees.

## A.    The Answer Brief

¶ 12    Husband argues that wife's answer brief violates C.A.R. 28(g) because it's longer than thirty pages. But C.A.R. 28(g) doesn't have a default page limit for a party's answer brief — only a requirement that it "contain no more than 9,500 words." C.A.R. 28(g)(1). The rule does go on to restrict a brief filed by a self-represented party who doesn't have access to a word processor to no more than thirty double-spaced one-sided pages. C.A.R. 28(g)(2). But wife is neither self-represented nor lacking access to a word processor. And wife's counsel certified that the answer brief comported with the word limits and other requirements of C.A.R. 28. Accordingly, because husband's argument has no merit, we reject his request to strike wife's answer brief.

## B.    Classification of Property

¶ 13    Husband advances four challenges to the trial court's classification of property as wife's separate property. Husband contends that the court erred when it classified wife's houses, trusts, art, and furnishings as her separate property because (1) wife comingled houses and trust assets with the marital estate and they grew in value; (2) the special master didn't sufficiently trace

whether payments on the Arizona house came from the principal or income of Trust One; (3) furnishings and art acquired during the marriage should have been presumed to be marital unless proved otherwise; and (4) the court over-relied on flawed testimony from wife's forensic accountant. We disagree that the court erred.

### 1. Standard of Review and Applicable Law

¶ 14 We can't disturb a trial court's division of property unless the court abuses its discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). When dividing property, the trial court must first determine whether a party's interest constitutes property and whether that property is marital or separate. *Id.* Property acquired during the marriage is generally considered marital, but inheritances are included in an exception to that rule. § 14-10-113(2), C.R.S. 2024.

¶ 15 A party must object to a special master's order or recommendations no later than fourteen days after being served with them. C.R.C.P. 53(f)(2).

### 2. Additional Facts

¶ 16 The trial court appointed a special master to decide whether the trusts and any payments related to the trusts were separate or

marital property. The special master had both parties submit expert reports and position statements on various issues, such as the proposed value of wife's trusts. Eventually, the special master held a hearing where several experts testified, including wife's forensic accountant, Tiffany Nelson. The special master found that the annual payments from Trust One to wife were marital property. The special master found that Trusts One and Two had appreciated during the marriage and classified that increase as marital property. The special master also found that furniture and art — valued at over $260,000 — were wife's separate property. Finally, the special master found by clear and convincing evidence that wife had traced money from Trust One used to the purchase of the Arizona house. The special master filed this report on February 2, 2024.

¶ 17 On February 27 — almost four weeks later and after the objection deadline had passed — the trial court accepted, approved, and adopted the special master's final report and recommendations. The trial court explicitly noted that neither party had objected to the special master's final report or recommendations.

¶ 18    In their joint trial management certificate, the parties stipulated to the values of the houses, the marital values of Trusts One and Two, and that Trusts Three and Four weren't marital property.

### 3.    Analysis

#### a.    Assets Were Separate

¶ 19    Husband argues that the trial court erred by classifying Trusts Three and Four as wife's separate property.  We disagree.

¶ 20    Husband stipulated at trial that Trusts Three and Four weren't marital property, and "'[s]tipulations are a form of judicial admission,' and 'are binding on the party who makes them.'" *Maloney v. Brassfield*, 251 P.3d 1097, 1108 (Colo. App. 2010) (citation omitted).  A trial court has the discretion to relieve a party of their stipulations if there is a "sound reason in law or equity for avoiding or repudiating a stipulation." *Id.*  But husband doesn't point to a place in the record where he made such a request; therefore the issue is waived.  *See In re Marriage of Evans*, 2021 COA 141, ¶ 24 (Waiver is the "intentional relinquishment of a known right.").  Because husband waived the issue, we won't

consider further the trial court's determination that Trusts Three and Four weren't marital property.

¶ 21    Next, husband contends that the court erred by awarding wife all three of the houses.  But none of the houses were purchased with marital funds, nor is husband listed on any deeds or loans.  Wife owned the Gunnison house before the marriage, the Parker house was purchased by Trust One and titled in its name, and wife purchased the Arizona house with funds from Trust One in the name of an L.L.C. that she owned.  While property that is acquired during a marriage is presumptively marital, if that property is an inheritance, or acquired in exchange for property acquired by inheritance, then it falls under an exception to the general rule.  *See* § 14-10-113(2).  Because wife demonstrated that she used separate funds to purchase all three houses, the trial court didn't err by concluding that those homes were her separate property.

### b.    Tracing Analysis

¶ 22    Husband next argues that it isn't clear whether separate or marital funds were used to purchase the Arizona house because wife didn't trace the origin of the trust money used to purchase the house to Trust One's principal or interest.

9

¶ 23    However, the special master explicitly found that wife had traced her payment for the Arizona house to her separate property with clear and convincing evidence. And husband never objected to the special master's recommendations before the trial court adopted them. *See* C.R.C.P. 53(f)(2).

¶ 24    Therefore, we perceive no errors in the trial court's ruling that the Arizona house was purchased with wife's separate property.

### c.    The Art and Furnishings Were Separate Property

¶ 25    Next, husband contends that the court erred when it ruled that luxury furnishings and "other personal property" were wife's separate property. But again, husband stipulated that over $260,000 worth of art and furniture were wife's separate property. Husband doesn't point to anything in the record that shows he requested the court release him from his stipulation; therefore the issue is waived. *See Maloney*, 251 P.3d at 1108; *Evans*, ¶ 24.

¶ 26    And if husband is referring to other items, he doesn't identify those items with any specificity. His record and legal citations don't provide any support for the propositions for which they are cited. Therefore, husband's argument is insufficiently developed. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App.

10

2007) (refusing to address underdeveloped argument). In any event, because husband waived the issue, we discern no error in the trial court's classification of any personal property, furniture, or art as wife's separate property.

### d. Tiffany Nelson's Expert Testimony

¶ 27 Husband next argues that the special master overly relied on Tiffany Nelson's expert testimony as a forensic accountant. Again, however, husband didn't object to the special master's report before the trial court adopted its recommendations. Therefore, this challenge is waived, and we won't address it. *See Evans*, ¶ 24.

### C. Property Division

¶ 28 Husband argues that the court committed seven errors when it divided the marital estate: (1) adopting a property division that unfairly favored wife and left husband with insufficient resources to maintain the marital lifestyle; (2) unfairly classifying as separate debt a $100,000 loan wife took out against the Arizona house to pay her separate, personal expenses during the divorce; (3) permitting wife to encumber a marital asset by taking out the $100,000 loan with the Arizona house as collateral; (4) failing to account for husband's noneconomic contributions to the marriage; (5) not

properly accounting for wife's substantial spending; (6) denying his request to be awarded the Arizona and Gunnison houses; and (7) improperly awarding wife the Parker house and $260,000 worth of art.  We disagree.

### 1.    Standard of Review

¶ 29    We review a court's order dividing marital property for an abuse of discretion.  *Balanson,* 25 P.3d at 35.

### 2.    Analysis

#### a.    The Property Division and Marital Lifestyle

¶ 30    Husband argues that the court's decision to award wife the bulk of the marital estate, including all three houses and Trust One, left him with insufficient resources to maintain the standard of living he enjoyed during the marriage.  But the court's decision to award wife the houses and Trust One was proper for two reasons.

¶ 31    First, as we discussed, *supra* Part II.B, the court properly determined that those assets were wife's separate property.  She inherited the money in Trust One and used it to buy the Parker and Arizona houses.  And she owned the Gunnison house before she married husband.

¶ 32    Additionally, the court relied on extensive testimony that the couple's spending during their marriage was unsustainable and would completely deplete Trust One within four to five years. Husband relies on *In re Marriage of de Koning*, 2016 CO 2, but that case offers no support for his argument that wife's separate property should be appropriated for his benefit.

¶ 33    Accordingly, we discern no error in the court's decision to award wife the bulk of Trust One and all three of the houses.

### b.    The Loan

¶ 34    At trial, wife testified that she took out a $100,000 loan against the Arizona house to pay off her credit card bills and to comply with a court order that she pay $50,000 of husband's attorney fees.

¶ 35    Husband asserts that this loan was improperly categorized as separate property by the judge. Husband claims that he was improperly burdened by the additional debt that was created by the loan. But husband doesn't explain *how* he was burdened by the loan — indeed, the record reflects that half of the loan was used to pay husband's attorney fees. And because wife was assigned the entirety of the debt associated with the loan, we discern no burden

13

on husband.  Because his argument is undeveloped, unsupported by legal authority, and contradicted by the record, we decline to address it further.  *See In re Marriage of Humphries*, 2024 COA 92M, ¶ 31.

### c.      Encumbrance of a Marital Asset

¶ 36     Husband argues that the loan encumbered a marital asset.  But, as set forth above, *supra* Part II.B, the court properly determined that the Arizona house wasn't a marital asset, and instead was wife's separate property.  Thus the loan didn't encumber marital property.  We discern no error by the trial court.

### d.      Husband's Noneconomic Contributions

¶ 37     Husband next contends that the trial court didn't properly consider his noneconomic contributions to the marriage — namely, that he was wife's travel companion, social partner, and homemaker, and that he had quit his job at Delta.  But the record contradicts his argument.  At the permanent orders hearing, the court noted that husband "sacrificed his career" to take on the role of wife's "travel companion" and "golf partner."  Indeed, the court awarded husband forty percent of the marital estate in large part based on husband's noneconomic contributions to the marriage.

Therefore, because the record shows the court considered husband's noneconomic contributions when it divided the marital estate, we discern no error.

### e. Wife's Spending

¶ 38    Husband contends that the court failed to address wife's spending of nearly one million dollars a year in its final orders. The record contradicts his assertion. In fact, the special master referenced wife's spending, noting that she had depleted her separate property by seven million dollars during the marriage. "[Wife] spent [seven million dollars] in an extremely generous way on herself and on her husband and all of the things that she's acquired." Because wife inherited the seven million dollars, it was her separate property. *Balanson*, 25 P.3d at 36. Husband's assertion that by spending the seven million dollars wife depleted the marital estate is unsupported by any evidence or legal authority, so we reject it.

### f. The Parker House and Art Collection

¶ 39    Husband asserts that the court erred by awarding wife the Parker house and $260,000 worth of art. But again, husband stipulated that the Parker house was wife's separate property, and

15

that $260,000 of art and furniture was wife's separate property. Therefore, the issue is waived, and we won't address it further. *Maloney*, 251 P.3d at 1108; *Evans*, ¶ 24.

### D. Maintenance

¶ 40 With respect to its award of maintenance, husband argues that the court erred when it (1) counted his second job as income for the purposes of calculating spousal maintenance; (2) failed to account for wife's actual income from her trusts; and (3) failed to account for wife's future inheritance in Trust Four.[1]

### 1. Standard of Review

¶ 41 We review a court's decision to award maintenance for an abuse of discretion, and we won't disturb the court's factual findings if they are supported by the record. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58. We review the court's application of the law de novo. *Id.*

---

[1] Husband twice claims the court failed to account for wife's future inheritance. We consolidated those arguments.

## 2. Analysis

### a. Husband's Second Job

¶ 42    Husband argues that the trial court erred when it included his second job as income for the purposes of calculating spousal maintenance.[2]  Wife responds that husband didn't sufficiently prove how many hours he worked at both jobs, so the court didn't err by including his second job as income.  We agree with wife.

¶ 43    The court referenced section 14-10-114(8)(c)(II)(C), C.R.S. 2024, when it made its findings regarding husband's employment.  Section 14-10-114(8)(c)(II)(C) says that gross income, for purposes of calculating maintenance, doesn't include "[i]ncome from additional jobs that result in the employment of the obligor *more than forty hours per week* or more than what would otherwise be considered to be full-time employment." (Emphasis added.)

¶ 44    Husband cites *In re Marriage of McSoud*, 131 P.3d 1208 (Colo. App. 2006), for the proposition that courts shouldn't consider temporary income when making long-term financial calculations

---

[2] Husband also claims the court made an inappropriate remark about how many jobs husband had, but his citation to the record isn't to any such statement — only the court's discussion of wife's income.

like maintenance. But while *McSoud* addresses other legal issues around permanent orders, it doesn't address spousal maintenance or how to determine a party's income.

¶ 45 Husband doesn't point to anywhere in the record where he offered any testimony or other evidence that he worked forty hours at his primary job as a financial advisor. "[A] party who fails to present sufficient evidence at trial should not be allowed on appeal to challenge the inadequacy of the evidence." *In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003). Moreover, it isn't this court's responsibility to search the record for evidence that would support the parties' arguments. *See* C.A.R. 28(a)(5) (It is the appellant's responsibility to include "appropriate references to the record."); *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1186 (Colo. App. 2011) (This court isn't required to search the record when "a party does not point us to where an issue was raised and resolved.").

¶ 46 Accordingly, we reject husband's contention that the court erred by including his second job when it calculated his income for the purpose of spousal maintenance.

### b. Consideration of Wife's Income

¶ 47    Husband contends that the court didn't properly consider wife's actual disbursements from her trusts during the marriage. The record contradicts his argument.

¶ 48    Kevin Bervik, the trustee of Trusts One, Two, and Three, testified that wife's income from the trusts was $23,500 a month. But Bervik also testified that the actual distributions from the trusts had been much higher than that during the final years of the marriage — around $885,000 a year, or $73,750 a month.  The court rejected that higher level of income as inappropriate, because both parties were operating at a loss:

> But if I strictly look at [$]23,500 as [wife's] gross income or her allowance under her own expert's testimony, I — I can stick to that.  But when we get to [section 14-10-114(3)(a)(I)(C)], it says, "Financial resources of each party, including, but not limited to actual or potential income from separate property," that brings in that other $50,000 a month that she's benefitting from or she's using.

> I've already said she can't live like that. Neither of these parties can live the way they propose they're living or want to live or that they theorize . . . that is their reasonable financial needs.  You can't argue to me that that's your reasonable financial needs when you're living at a loss.

19

¶ 49 Because the court's decision not to impute wife's income consistent with her spending during the marriage was reasonable based on the evidence in the record, we won't disturb it.

### c. Trust Four

¶ 50 Husband argues that the court should have considered wife's potential inheritance from Trust Four when it calculated spousal maintenance. But the parties stipulated that any money that might be awarded to wife from Trust Four wasn't marital property[3], and husband doesn't claim to have requested that the court release him from that stipulation. Accordingly, the issue is waived and we decline to address it. *See Maloney*, 251 P.3d at 1108; *Evans*, ¶ 24.

### E. Procedural Issues

¶ 51 Husband contends that the court erred when it (1) allotted insufficient time for the final orders hearing; (2) exhibited bias against him; and (3) failed to hold a separate hearing on his request for attorney fees. We disagree.

---

[3] The funds in Trust Four had been subject to a lawsuit for several years at the time of the permanent orders hearing.

## 1. The Hearing Time Allotted

¶ 52 Husband argues that the trial court erred by (1) only allotting 450 minutes for the permanent orders hearing and then rushing the hearing to attend a memorial event; and (2) not providing enough time for husband to cross-examine Nelson, wife's expert forensic accountant, about Trust Three. We disagree.

### a. Adequacy of Allotted Time for Hearing

¶ 53 Husband argues that the 450 minutes allotted by the trial court was insufficient for a permanent orders hearing that involved a highly complex divorce with substantial assets. He also argues that the trial court rushed the proceedings by ending early on the second day. His arguments aren't supported by the record.

¶ 54 The trial court clarified the time it was allotting the parties at the beginning of the permanent orders hearing:

> [Husband's counsel:] Secondly, Your Honor, I just wanted to make sure we are on the same page — or I'm on the same page as you are with regard to time. The scheduling order in this case indicates two days. When we had our phone conference before the scheduling order was issued, I think the Court indicated a day and a half. But I just wanted to make sure we're within whatever time you're allotting for the hearing.

21

THE COURT: Yeah.  I have it down as a day and a half.  I think I have it down as two days because I am issuing the order after this hearing.  And I can't do that if I give you a hundred percent of two days. . . .

So it is a full day today and a half-day tomorrow, and then — and generally, depending on the complexities of issues, we'll take an hour or two to finalize my notes and then I just issue an oral ruling immediately after the hearing.

¶ 55 After the court clarified the timeframe for the hearing, husband's counsel responded, "Very good."

¶ 56 It is clear that husband's counsel agreed to the court's allotment of time for the hearing.  Husband claims his counsel objected to the time allotted by the court but provides no citations to the record for us to review.  *See Valentine*, 252 P.3d at 1186 (a party must provide record support for their arguments).  In the absence of any record support that husband's counsel objected to the time allotted by the court, and in light of his agreement to the same, the issue is waived, and we won't address it.  *See Evans*, ¶ 24.

### b.    Adequacy of Time for Cross-Examination

¶ 57    Husband next argues that the time allotted by the trial court deprived him of his opportunity to cross-examine Tiffany Nelson, the forensic accountant, about Trust Three. To the extent husband's argument relates to insufficient time, he waived that argument by failing to object or request additional time. *See Evans*, ¶ 24. To the extent that husband is attempting to relitigate the issue of whether Trust Three was marital property, we have already determined that he waived that issue by stipulating that it wasn't marital property. *See supra* Part II.B.3.a.

### 2.    Judicial Bias

¶ 58    Husband contends that the trial court judge exhibited bias and compromised the fairness of the hearing by (1) displaying favoritism and treating the financial behaviors of the parties differently and (2) inappropriately offering financial advice to wife after awarding husband a $675,000 equalization payment. We disagree that the judge exhibited any bias.

### a.    Standard of Review

¶ 59    We review claims of judicial bias de novo. *Sanders v. People*, 2024 CO 33, ¶ 25. We will only question the result of a proceeding

if the judge was actually biased. *People v. Garcia*, 2024 CO 41M, ¶ 21. In order for a claim of bias to succeed, the party asserting bias "must establish that the judge had a substantial bent of mind against him or her." *People in Interest of A.P.*, 2022 CO 24, ¶ 30 (citation omitted). "The record must clearly demonstrate the alleged bias. Bare assertions and speculative statements are insufficient to satisfy the burden of proof." *Id.* (citation omitted).

### b. Favoritism

¶ 60    Husband argues that the judge exhibited bias by excessively focusing on how much he spent on haircuts, while ignoring wife's much more significant spending habits that resulted in "the depletion" of seven million dollars of marital assets. But the judge didn't question husband's haircuts:

> [THE COURT]: . . . We received testimony about [husband] saying that he spends $1,300 a month in hair and clothing. He said that he — he gets — once a month, he gets an [eighty dollar] haircut. So then by that rationale . . . he's spending $1,220 a month on — on clothing.

The judge only referenced the price of husband's haircut in order to accurately calculate how much husband was spending on clothing

every month.  The judge's comment doesn't demonstrate any bias at all.

¶ 61    Additionally, husband claims that the judge made two other disparaging remarks that demonstrated bias, but his record citations don't match his claims.  Both of his record citations in support of these statements are to his own counsel's cross-examination of wife, not any statement that he claims the judge made.  Because his argument is entirely without merit, legal authority, or legal analysis, we don't address it.  *Humphries*, ¶ 31.

### c.    Financial Advice

¶ 62    Husband's penultimate contention is that the judge demonstrated bias when he offered wife financial advice but not husband.  But that isn't true.  The judge wasn't offering wife financial advice.  Consider the exchange in question:

> [THE COURT]: . . . I'm finding that the equitable division of the marital estate is that Wife would pay to Husband $675,730.60 from her portion of the marital estate.
>
> . . . Now, certainly I can understand the question being, "Well, how do I do that?"  Well, to me, it seems obvious.
>
> And — and I'm no financial expert, and I would suggest you consult one.  But when you have a

25

property worth $2,050,000 and the only . . .
outstanding debt [is $]391,726, it seem[s] very
evident to me that you have $[1,600,000] in
equity in this property and refinancing that to
pay out [$]675[,000] should be easy.

But again, I'm no financial expert, so I suggest
you consult one. But this payout is
manageable, and it's appropriate, and it's
equitable, and it's supported by the law, and
it's certainly supported by the Court's
consideration of [section] 14-10-113.

¶ 63    It is clear that the judge was justifying the reasonableness of
his order that wife pay husband $675,730.60 — not offering
financial advice. Indeed, the judge repeatedly disavowed any
qualifications to be a financial advisor and encouraged wife to
consult one. Moreover, the judge's comments fall far short of
establishing that he had a "substantial bent of mind" against
husband. *A.P.*, ¶ 30 (citation omitted). Accordingly, we reject
husband's judicial bias claim.

¶ 64    Because husband failed to show that the judge was actually
biased against him, we reject his argument that the judge's
statement warrants any reconsideration of the permanent orders.

26

### 3. Special Hearing on Attorney Fees

¶ 65 Last, husband contends that the trial court erred by failing to hold a hearing to determine whether the attorney fees were reasonable. But husband creates a fictitious citation — *Kendall v. Kendall*, 94 P.3d 606 (Colo. 2004) — in support of this contention. We therefore decline to address husband's argument.

### F. Appellate Attorney Fees

¶ 66 Wife argues that husband's appeal is frivolous and requests that this court order husband to pay her appellate attorney fees and costs under C.A.R. 38(b) and section 13-17-102, C.R.S. 2024. We agree that husband's appeal is frivolous for three reasons.

¶ 67 First, as we discuss throughout this opinion, the legal citations in husband's briefs rarely support the proposition for which they were cited. Moreover, two of his contentions aren't accompanied by citations to any legal authority at all. Even more egregious, as we noted *supra* Part II.E.3, husband cited a nonexistent case. *Cf. Al-Hamim v. Star Hearthstone, LLC*, 2024 COA 128, ¶ 41 (parties to any action in this court are warned against filings that contain "hallucinations" produced by generative artificial intelligence). Despite wife pointing out these deficiencies in her

answer brief, husband didn't offer an explanation or rebuttal; instead he continued the practice in his reply brief.

¶ 68 Second, most of husband's twenty-one separate contentions are woefully underdeveloped. Several are repeated. Many contain claims that aren't substantiated by the record or include inaccurate record citations.

¶ 69 Third, husband's brief violates C.A.R. 28(a)(7)(A) because it doesn't contain any legal authorities to justify husband's standards of review.

¶ 70 Given all of this, we agree with wife that husband's appeal lacks substantial justification because the appeal is substantially frivolous and groundless. *See* § 13-17-102(2). But because husband isn't represented by counsel on appeal, that conclusion alone isn't an adequate basis for an award of attorney fees. Section 13-17-102(6) requires that "[a] party who is appearing without an attorney . . . shall not be assessed attorney fees . . . unless the court finds that *the party clearly knew or reasonably should have known* that the party's action . . . was substantially frivolous, substantially groundless, or substantially vexatious." (Emphasis added.) Because of the fact-intensive nature of the inquiry of

whether husband clearly knew or should have known that his appeal was frivolous, as an appellate court we aren't in a good position to make this determination. The trial court, however, is. *See In re Marriage of Nevedrova*, 2024 COA 112, ¶ 18 ("Because the district court is better equipped to determine the factual issues regarding the parties' current financial resources, we remand the issue of whether wife should be awarded reasonable appellate attorney fees to the district court.").

¶ 71 Therefore, on remand, the trial court should first assess whether husband clearly knew or should have known that his appeal was substantially frivolous and groundless as required by section 13-17-102(6). If the trial court determines that husband did have the requisite knowledge (and that, therefore, attorney fees on appeal are appropriate), then it shall determine and award wife her reasonable attorney fees and costs incurred on appeal. *See, e.g., Tisch v. Tisch*, 2019 COA 41, ¶ 93 (recognizing this court's discretion under C.A.R. 39.1 to remand the case to the trial court for a determination of reasonable appellate attorney fees).

## III.  Disposition

¶ 72    The judgment is affirmed, and the case is remanded to the trial court to address issues related to wife's request for an award of appellate attorney fees.

JUDGE KUHN and JUDGE SCHUTZ concur.